The **DISTRICT OF COLUMBIA ARMORY BOARD** et al., Appellants,

v.

**D. G. VOLKERT,** t/a Ewin Engineering Associates, and Reynolds Metals Company, Appellees.

No. 21283.

United States Court of Appeals District of Columbia Circuit.

Argued Feb. 5, 1968.

Decided Sept. 6, 1968.

Mr. John R. Hess, Asst. Corporation Counsel for the District of Columbia, with whom Messrs. Charles T. Duncan, Corporation Counsel, Hubert B. Pair, Principal Asst. Corporation Counsel, and Richard W. Barton, Asst. Corporation Counsel, were on the brief, for appellants.

Mr. John K. Mallory, Jr., Washington, D. C., with whom Mr. Roger D. Chittum, Washington, D. C., was on the brief, for appellee D. G. Volkert, t/a Ewin Engineering Associates.

Mr. Carl L. Taylor, Washington, D. C., with whom Mr. Frank F. Roberson, Washington, D. C., was on the brief, for appellee Reynolds Metals Company.

Before WRIGHT, McGOWAN and TAMM, Circuit Judges.

McGOWAN, Circuit Judge:

Appellants, the District of Columbia Armory Board and its individual members, complain of a District Court order granting summary judgment against them in their suit seeking damages for cracks which appeared in the D. C. Stadium. The judgment appealed from was founded upon assertions by appellees that the suit was untimely under the applicable statute of limitations. For the reasons hereinafter appearing, we find no error in the District Court's disposition of the matter.

### I

The action was begun in the District Court on March 14, 1966. It alleged that the cause of the cracks was the use of aluminum electrical conduit in conjunction with calcium chloride in the concrete mix, thereby causing electric current to escape with consequent damage to the concrete structure. Appellee Reynolds Metals Company ["Reynolds"] was the manufacturer and supplier of the aluminum conduit to General Electric Company, which was the immediate vendor of the electrical subcontractor. Appellee D. G. Volkert, t/a Ewin Engineering Associates ["Ewin"], contracted with the Board to supply architectural-engineering services in the preparation of plans and specifications and in supervising construction under them. Reynolds had no direct contractual relations with the Board, and is sued in two counts of negligence and one count of breach of implied warranty. Ewin is sued in one count of negligence, one count of breach of implied warranty, and one count of breach of a contract under seal.

The essence of appellants' complaint is that appellees either knew, or should have known, that the interaction of aluminum conduit and calcium chloride would inevitably result in damage to the structure, and that Ewin should not have prepared plans and specifications contemplating the use of both, nor should Reynolds have supplied aluminum conduit for such use.

Ewin and Reynolds each moved for summary judgment, under Rule 56, FED. R.CIV.P., and Local Rule 9(h) of the District Court, relying upon 12 D.C.CODE § 301.[1] They asserted that, because of

---

1. Since the scheme of this statute is best grasped by seeing it entire, it is set forth in full below:

§ 12–301. Limitation of time for bringing actions

Except as otherwise specifically provided by law, actions for the following purposes may not be brought after the expiration of the period specified below from the time the right to maintain the action accrues:

(1) for the recovery of land, tenements, or hereditaments—15 years;

(2) for the recovery of personal property or damages for its unlawful detention—3 years;

(3) for the recovery of damages for an injury to real or personal property—3 years;

(4) for libel, slander, assault, battery, mayhem, wounding, malicious prosecution, false arrest or false imprisonment—1 year;

(5) for a statutory penalty or forfeiture—1 year;

(6) on an executor's or administrator's bond—5 years; on any other

information elicited in pretrial discovery, there were no material issues of fact to be tried with respect to the Board's knowledge of the damage and its cause more than three years prior to the filing of suit. The principal item upon which appellees rely is the deposition taken of Mr. James A. Blaser, Director of the Department of Buildings and Grounds of the District of Columbia, who served as the Board's Contracting Officer for the construction of the D. C. Stadium.

That construction began in July, 1960, and was completed in April, 1962. Mr. Blaser, a qualified civil engineer, testified that the cracking first came to his attention in "late January or early February of '62." He related that, because similar problems had developed in the construction of other buildings in the Washington Metropolitan Area, a study group had been set up by a number of governmental agencies to try to ascertain the cause, apparently under the primary leadership of the Federal Bureau of Standards. Mr. Blaser's D. C. Department of Buildings and Grounds had a representative in the study group in the person of Mr. Richard Crutchfield, Chief of Design and Engineering for the

D. C. Department of Buildings and Grounds.

By "late February of '62," according to Mr. Blaser, the group had concluded its effort, and, to his knowledge, it had decided that the cracking was due to the interaction of aluminum conduit and calcium chloride. Mr. Blaser said that, in response to this conclusion, "[W]e immediately stopped any usage of aluminum conduit imbedded in concrete." [2] This reference is presumably to other buildings than the Stadium because Mr. Blaser went on to say that all of the conduit installation at the Stadium had been completed by mid-February, 1962. He formally accepted the Stadium on behalf of the Board in April, 1962. The deposition includes this colloquy upon the Board's state of knowledge as of February, 1962:

> Q. Mr. Blaser, it is a fair summary of your information that by mid-February, approximately mid-February 1962, it was common knowledge to the people working on the stadium project that there was a problem of concrete cracking and the probable cause of it was aluminum conduit in the presence of steel reinforcing rods to

---

bond or single bill, covenant, or other instrument under seal—12 years;
(7) on a simple contract, express or implied—3 years;
(8) for which a limitation is not otherwise specifically prescribed—3 years.
This section does not apply to actions for breach or contracts for sale governed by § 28:2-725.

2. The record contains the following memorandum, dated February 16, 1962, from Mr. Crutchfield to the Chief of the Construction Management Division of the D. C. Department of Buildings and Grounds:
It has come to the attention of this office that serious and possibly dangerous damage to the concrete can result when aluminum conduit is concealed in fresh, unseasoned reinforced concrete containing calcium chloride as an admixture. The products formed by galvanic corrosion of the aluminum are

such that extensive cracking of the concrete may occur. Another result which has been found to happen is the collapse of the conduit, rendering it unusable.

Until our present investigation as to the causes for the severe cracking of concrete in a column and beams at the Warehouse and Record Center Building is completed no aluminum conduit should be concealed in any of our present contracts where calcium chloride is used in the concrete mixture. On these projects where aluminum conduit has been approved, approval should be rescinded or the contractor notified that calcium chloride will not be permitted as an admixture and that alternate means must be taken to protect the concrete in cold weather.

A resumé of our present projects under contract is being prepared to indicate their status in this connection, a copy of which will be given you when completed.

which additives of calcium chloride had been added?

A. I would say, the end of February would be better than the middle of February.

Q. There isn't any doubt in your mind about the year involved, is there?

A. No, sir.

Appellants filed a pleading in opposition to the motions for summary judgment. It does not challenge Mr. Blaser's deposition but asserts instead that it was not until July 1, 1963, that any "serious disturbance was reported," and that it thereafter engaged an engineering firm to look into the matter. This firm reported to the Board on July 20, 1964, that the damage was caused by the juxtaposition of aluminum conduit and calcium chloride. As noted above, suit was not brought until nearly two years later. The only issue of material fact tendered by the Board in its opposition to summary judgment was phrased by it in these terms:

Therefore, an issue of fact of grave materiality is in issue, to wit, at what point in time were the plaintiffs aware, with sufficient, scientific and technical justification, to aver and establish the ground upon which suit could be brought against these defendants.

## II

■ Appellants argue to us that they were entitled to refrain from suit until they had explored the matter in their own way by means of retaining an independent expert, and that they cannot be charged with knowledge of the accrual of a cause of action until this more leisurely process had been completed. They do not contest before us that Blaser was

their responsible representative, and that whatever he knew is imputable to them. This last is a concession which, it seems to us, they had no choice but to make. In the light of it, we think there was no material issue of fact to be tried on the issue of when the Board must be said to have known of the damage to the Stadium and of the factors asserted in the complaint to have been its cause.[3] On the record before us, and to the extent that the applicable period of limitations is three years, the District Court cannot be said to have erred in granting summary judgment.

As to Reynolds, not even appellants contend that a limiting period of longer than three years applies; and the same is true of the negligence count against Ewin. As to the other two counts against Ewin, appellants, not in their opposition papers but somewhat belatedly in oral argument, suggested to the District Court that a longer period applied because Ewin's contract with the Board was under seal. That suggestion is more fully articulated on appeal by urging that the 12-year period of limitations applicable to suits on any bond, bill, covenant, or "other instrument under seal," governs not only the count for breach of the contract itself, but also the count for breach of implied warranty because such an implication derives from the contract and is, thus, protected by the same limiting period.

We do not pursue the niceties of this latter question, although we remark that we have heretofore tended to take a narrow view of what is comprehended within a suit "on" a sealed instrument. *See* Filson v. Fountain, 90 U.S.App.D.C. 273, 197 F.2d 383 (1952); *cf.* Brice v. Walker, 73 App.D.C. 377, 121 F.2d 864 (1941).[4]

3. Appellants did not, in their opposition to summary judgment, tender any disputed question of fact needing ventilation and resolution, by credibility determinations or otherwise, at trial. Their claim really was, and is, that they were entitled to take a longer time to determine the precise extent of the damages and to double-check their initial conclu-

sions. This is not really a factual issue at all, but a legal one of the latitude implicitly afforded for this purpose by a statute of limitations. On the undisputed facts before the District Court, it could only have been resolved in one way.

4. A clear authority to this effect is Pierce v. Stitt, 126 Wis. 62, 105 N.W. 479

A related question has engaged the attention of courts outside this circuit in a context not relevant here—namely, if different periods of limitation are applicable to oral, as distinct from written, contracts, which governs in the case of a breach of implied warranty?[5] Our statutory scheme of limitations does not embody this particular differentiation. In the general area of contract claims, the line is drawn, in effect although not in terms, between both written and oral unsealed contracts, on the one hand, and instruments under seal, on the other. Even this circumstance is only of passing interest in the resolution of the problem before us, however, because there is, for present purposes, an even more critical distinction made in our limitations statute between *actions* to recover damages for injury to real or personal property, and all other *actions*, whatever may be the legal bases asserted.

12 D.C.CODE § 301, note 1 *supra*, is entitled "[L]imitation of time for bringing actions." Its specific proscriptions are prefaced by the injunctive words that " * * * actions for the following purposes may not be brought after the expiration of the period specified below from the time the right to maintain the action accrues. * * * " One of those "following purposes" is "(3) for the recovery of damages for an injury to real or personal property—3 years."

 There can, we think, be no question but that the purpose of appellants'

action is to recover damages for an injury to real property. The complaint is replete with references to the fact that the Stadium has been "substantially damaged," and that appellants are entitled to be made whole for the past and future costs to them of repairing such damage. It is the recovery of these costs, and not merely reimbursement for the replacement of defective materials, which is the purpose of the action, whatever may be the legal theories upon which the different counts are constructed.

It may be said, of course, that one of the purposes contemplated in 12 D.C. CODE § 301 is suit on an "instrument under seal," for which 12 years are allowed as the limitations period; and that there is no reason why this purpose should be regarded as subordinate to any other. This unquestionably creates an ambiguity in a situation like the one before us, which must be dispelled, as best it can, by statutory construction. There is, in this instance, no apparent legislative history which can be summoned to our aid. Neither are there any prior cases in this jurisdiction which point the way.

Elsewhere the results are mixed and not too illuminating because of variations in statutory wording, but the majority approach clearly appears to regard as controlling a limitation as specifically and pointedly addressed, as is our own, to a particular kind of injury. Thus the Sixth Circuit has recently held that, in a suit by a tenant for breach of lease

(1905), where the 20-year limitations period on sealed instruments was held not to apply to a suit for expenses incurred under a sealed power of attorney. The Wisconsin Supreme Court wrote in language reminiscent of our own comment in *Filson* that:

" * * * The [sealed] option agreement did not recite or mention the indebtedness for which appellants sue. Obviously, therefore, the suit is not brought 'on' the *option* agreement. * * * "

90 U.S.App.D.C. at 274, 197 F.2d at 384. A general disinclination by courts to permit dilatory suitors to take shelter under the long periods of limitation applicable to sealed instruments is visible in the process of defining what are suits "on" sealed contracts. *See* 53 C.J.S. Limitations of Actions § 52 (1948).

5. Appellants (who have cited no D.C. cases on any aspect of their statute of limitations contentions vis-a-vis Ewin) rely on cases dealing with this question. *See* Stanley v. Chastek, 34 Ill.App.2d 220, 180 N.E.2d 512 (1962); Economy Fuse & Mfg. Co. v. Raymond Concrete Pile Co., 111 F.2d 875 (7th Cir. 1940); Certain-Teed Products Corp. v. Bell, 422 S.W.2d 719 (Tex.1968); *but see, e, g.,* Las Mendozas, Inc. v. Powell, 368 F.2d 445 (5th Cir. 1966).

against a landlord for injuries to the tenant's possessions caused by the collapse of a ceiling, the Ohio 2-year limitation period for "injury to personal property" applied instead of the 15-year period for suits on contracts. Sears, Roebuck & Co. v. Cleveland Trust Co., 355 F.2d 705 (6th Cir. 1966). The court said:

> \* \* \* If the damages for which an action seeks recovery consist of personal injury or damage to property, the vast majority of courts apply the statute which specifically refers to such injury or damages, regardless of whether the duty breached was imposed by contract or common law. \* \* \*

355 F.2d at 708. *See also* Utah Poultry & Farmers Cooperative v. Utah Ice & Storage Co., 187 F.2d 652, 23 A.L.R.2d 1461 (10th Cir. 1951) ; Pinkerton & Laws Co. v. Nashville Flying Service, Inc., 218 Tenn. 252, 402 S.W.2d 861 (Tenn.1966).

■ It is perhaps not enough to justify this approach, as some courts do, by reference to a rule of construction that, where there is seeming overlap, the more specifically descriptive statute governs. There is ample warrant, rather, for thinking the Congress' preoccupation in Section 301 with property injury claims as a distinct class reflected a policy that lawsuits involving them should be heard and disposed of with reasonable promptitude, both for reasons of efficiency in evidentiary exploration and because of the undesirability of lengthening un-

duly into the future the unresolved shadows of such claims. Such considerations would, for example, seem to be highly pertinent in this case; it would be hard indeed to justify the first assertion of this claim in the twelfth year of its life.

■■ Policy considerations of this nature are obviously attuned to the nature of the injury involved rather than to the legal theories available for its redress. Where real or personal property is injured and suits are brought to recover damages, we think Congress has said quite clearly that 3 years is the limitation period, whether contract (sealed or unsealed, written or oral) or tort be made the legal vehicle of recovery. This does not render the limiting provision of 12 years on sealed instruments a nullity. That provision still operates where suits on such instruments do not have as their purpose the recovery of damages for injury to real or personal property. Such suits have, we think, been carved out for a shorter limiting period even when the duty breached is embodied in a sealed contract. This conclusion is, in our view, sustainable both by reference to the face of the statute here involved and to rational speculations about the legislative policies underlying the words used. It is also more in keeping with the diminishing significance of the seal as a meaningful legal symbol.

The judgment of the District Court is Affirmed.