CHURCH OF SCIENTOLOGY OF
CALIFORNIA, Appellant,

v.

Shirley FOLEY et al.

No. 77–2134.

United States Court of Appeals,
District of Columbia Circuit.

Originally Argued Jan. 4, 1979.
Argued before Court *En Banc*
Oct. 20, 1980.

Decided by Court *En Banc*
Jan. 8, 1981.

Russell F. Canan, Washington, D. C., for appellant.

John R. Fisher, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert *, U. S. Atty., and John A. Terry, Asst. U. S. Atty., Washington, D. C., were on the brief, for appellee.

Before WRIGHT, Chief Judge, and McGOWAN, TAMM, ROBINSON, MacKINNON, ROBB, WILKEY, WALD, MIKVA, EDWARDS and GINSBURG, Circuit Judges.

Judgment PER CURIAM.

Concurring opinion filed by Circuit Judge MacKINNON.

Dissenting opinion, in which Circuit Judges EDWARDS and GINSBURG join, filed by Circuit Judge SPOTTSWOOD W. ROBINSON, III.

JUDGMENT

PER CURIAM.

This cause came on to be heard on the record from the United States District Court for the District of Columbia and was argued by counsel before the court *en banc.* While the issues presented occasion no need for an opinion, they have been accorded full consideration by the court. *See* Local Rule 13(c).

This court is of the view that the complaint filed in this case was properly dismissed by the District Court, basically for

* United States Attorney at the time the brief was filed.

the reason stated in its order filed October 27, 1977.

On consideration of the foregoing, it is ORDERED and ADJUDGED by this court that the judgment of the District Court appealed from in this cause is hereby affirmed.

MacKINNON, Circuit Judge (concurring).

In my opinion *en banc* rehearing was necessary to maintain the uniformity of our decisions.

In dissenting from the panel opinion in this case Judge Wilkey stated

> this court quite logically has construed that language [of the D.C. statute of limitations] as mandating an inquiry into the *"nature of the injury involved* rather than to the legal theories available for its redress." [Emphasis added.]

Footnote 3 was cited in support of this assertion, as follows:

> [3] *District of Columbia Armory Bd. v. Volkert,* 402 F.2d 215, 220 (D.C.Cir.1968). In *Volkert,* plaintiff sued the supplier and architect firm responsible for the construction of the D.C. stadium after defects occurred in the stadium. Although the underlying theory of liability alleged was negligence, the *purpose* of the action was to recover damages for injury to the property. Thus the court held that the provision "for the recovery of damages for an injury to real or personal property," 12 D.C.Code § 301(3), stated the applicable limitation period.

The dissent takes the position that three potential claims have been suggested: *First,* infringement of appellant's rights under the First and Fifth Amendments.

*Second,* breach of a due-care duty implicit in whatever federal statute or regulation purportedly authorized the activities of the appellees. *Third,* common law negligence in the maintenance of government files. Yet, the *purpose* of each of these claims is to recover damages for defamation. Therefore, the statute of limitations applicable to actions for defamation determines whether the suit was timely filed.

The *en banc* court's action affirms the district court's dismissal of the complaint, because the activities complained of therein occurred in excess of one year before the filing of the law suit and hence plaintiff's claim was barred by the District of Columbia one-year statute of limitations for libel. 12 D.C.Code § 301(4). (App. 60). The dissent argues that the issues presented are too unimportant for *en banc* consideration, and that the panel opinion therefore should be reinstated. Rehearing *en banc,* however, is proper to "secure or maintain uniformity of . . . decisions." F.R.App.P. 35. And since the panel decision in this case was inconsistent with *Volkert,* it was proper to maintain the uniformity of our decisions by reversing the panel decision on rehearing *en banc.*

SPOTTSWOOD W. ROBINSON, III, Circuit Judge, with whom EDWARDS and GINSBURG, Circuit Judges, join, dissenting:

This case came before the court *en banc* after a divided panel [1] reversed a District Court order [2] dismissing as time-barred an action brought by appellant, the Church of Scientology of California, against four federal employees, the appellees herein.[3] The

---

1. *Church of Scientology v. Foley,* No. 77-2134 (D.C.Cir. Feb. 20, 1980) (majority and dissenting opinions). In accordance with current practice, the panel opinions and judgment were vacated when rehearing *en banc* was granted.

2. *Church of Scientology v. Foley,* Civ. No. 77-0495 (D.D.C. Oct. 27, 1977), Appendix (App.) 60.

3. The four employees are Shirley Foley, John T. McGill, Charlotte Murphy and June Norris. At all times relevant to this appeal, Foley was an

employee of the Department of Labor, McGill was an officer of the Department of State, and Murphy and Norris were attorneys at the Internal Revenue Service. All four sought the dismissal on the ground that the action was barred by the District of Columbia statute of limitations applicable to defamation actions, D.C.Code § 12–301(4) (1973). They did not then claim official immunity from suit, but in their dismissal motion they made known their

Church sought money damages on the basis of allegations that appellees had participated some ten years earlier in the preparation and dissemination of a Department of Labor memorandum containing statements falsely accusing the Church of certain bizarre activities. Today, without opinion, the court exercises its *en banc* power to affirm the District Court, for no apparent reason other than disagreement with the panel's decision. Because I am persuaded that nothing in this case presents a question of exceptional importance and that the majority panel opinion portends no conflict with our past holdings, I would vacate the order granting the rehearing *en banc* as improvident and dissolve the *en banc* court. Accordingly, I respectfully dissent.

## I. BACKGROUND

The factual backdrop of this litigation is supplied by the Church's complaint.[4] The memorandum ultimately sparking the controversy was written by appellee Shirley Foley in November, 1967. It was a summary of an "investigation concerning the Church of Scientology . . . made in order to form an opinion as to whether the body can be considered a bona fide religious organization for the purpose of alien employment certification."[5] Foley reported that there was evidence that LSD and perhaps other drugs were widely used by assembled Church members; that an electric shock was administered to new members as a part of the Church's initiation ceremony; and that several persons in different parts of the United States had been shot, though not killed, because they had objected to the membership of their teen-aged children in the Church.[6] The memorandum cited appellees June Norris and Charlotte Murphy as the sources of this information,[7] and advised that they "urgently request[ed] that the Department of Labor withhold alien employment certification on any basis for the Church of Scientology."[8]

In February, 1968, the memorandum was forwarded to appellee John McGill,[9] who in turn supplied a copy to a branch office of the Immigration and Naturalization Service.[10] That, the Church asserts, led to initiation of visa-revocation proceedings against an alien Scientologist minister,[11] and to a long-term pattern of unremitting discrimination and harassment by governmental officials and agencies acting on the strength of the memorandum.[12]

---

intention to address that subject if the motion was denied. App. 14. Because the motion was successful, an immunity defense never emerged.

4. In consequence of the issuance of a protective order deferring discovery and the dismissal of the Church's action shortly thereafter, the facts of the case were never fully developed. But it is well settled that on a motion to dismiss for failure to state a claim upon which relief can be granted, the complaint must be indulged the construction most favorable to the plaintiff and its allegations must be taken as true. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90, 96–97 (1974); *California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 515, 92 S.Ct. 609, 614, 30 L.Ed.2d 642, 649 (1972); *Jenkins v. McKeithen*, 395 U.S. 411, 421–422, 89 S.Ct. 1843, 1849, 23 L.Ed.2d 404, 416–417 (1969).

5. Appendix to Appellants' Brief (Supp.App.) 1. The investigation apparently was conducted pursuant to a request by the Immigration and Naturalization Service to the Department of Labor.

6. Supp.App. 1.

7. Supp.App. 1. During the course of the investigation Foley had conferred with Norris and Murphy, who apparently based their statements upon prior Internal Revenue Service investigations of the Church. Supp.App. 1.

8. Supp.App. 2.

9. Appellant's Complaint, ¶ 14, App. 5–6 [hereinafter cited as Complaint].

10. Complaint, ¶ 14, App. 5–6.

11. Complaint, ¶ 13, App. 5.

12. Complaint, ¶¶ 17–18, App. 6–7. In 1975, the Department of Labor officially acknowledged that the information incorporated into the memorandum "was irrelevant, unverified and based on hearsay," and slated the memorandum for destruction. Supp.App. 3.

The Church instituted the instant litigation in March, 1977.[13] In its complaint, it charged that the forerunning events infringed its First Amendment right to freely exercise religious beliefs and its Fifth Amendment right to due process of law.[14] The complaint averred that the memorandum incorporated information that appellees knew or reasonably should have known was false;[15] that the memorandum was maintained in the files of the Department of Labor despite the risk that the information would be disseminated to the detriment of the Church;[16] and that the harm feared actually came to pass.[17]

In response to the complaint, appellees moved for dismissal on the ground that the suit was precluded by the District of Columbia statute limiting the time period for commencement of defamation actions to one year.[18] Appellees also requested a protective order barring discovery pending disposition of the motion.[19] The District Court subsequently issued the protective order.[20] When the Church thereafter filed an amended complaint which, save for minor alterations, was identical to the original,[21] the court granted appellees' renewed motion to dismiss, concluding that the cause of action sounded only in defamation and thus was barred by the one-year statutory limitation.[22]

On appeal, the panel upheld the dismissal to the extent that the claim was one for defamation.[23] On the ground that the complaint might have stated some additional and different cause of action under either the Constitution or some unspecified federal statute or regulation, however, a majority of the panel reversed and remanded for further consideration.[24] The full court then agreed to rehear the case *en banc*, and now affirms the District Court's dismissal order.

## II. RULE 35 AND THE PREEMINENCE OF THE THREE-JUDGE COURT

The full panoply of powers conferred upon the federal courts of appeals is statutorily vested in three-judge panels.[25] A court of appeals may sit *en banc* only in the narrowly-defined circumstances specified by Rule 35 of the Federal Rules of Appellate Procedure, which declares that

---

**13.** The Church asserted that it had no knowledge of the existence of the memorandum prior to the conclusion of a contested Freedom of Information Act proceeding in April, 1975. Complaint, ¶ 19, App. 7. While stating that it was long aware that it was the object of governmental discrimination and harassment, the Church says it previously was unable to identify the individuals responsible therefor. Complaint, ¶ 19, App. 7.

**14.** Complaint, ¶ 20, App. 8. Invoking also the common law of the District of Columbia, Complaint, ¶ 2, App. 2, the Church laid claim to both federal-question and diversity jurisdiction, 28 U.S.C. §§ 1331(a), 1332(a)(1) (1976). Complaint, ¶ 2, App. 2. Damages exceeding $10,000 were sought for injuries assertedly suffered. *Complaint* ¶ 2, App. 2.

**15.** Complaint, ¶ 11, App. 4.

**16.** Complaint, ¶ 12, App. 4–5.

**17.** Complaint, ¶¶ 11, 13–15, 17–18, App. 4, 5–7. In addition to the alleged invasions of the constitutional and common law rights themselves, the Church averred that its reputation was damaged; that it was hindered in its ability to enlist parishioners and financial contributions; that it became the continuous object of arbitrary discrimination and harassment by various governmental agencies and personnel; and that it was required to pay large sums of money for legal and related expenses in endeavors to regain its rights. Complaint, ¶¶ 18, 20, App. 7, 8.

**18.** D.C.Code § 12–301(4) (1973), quoted in relevant part *infra* note 52.

**19.** Supp.App. 4. Appellees argued that judicial economy would be promoted by deferring discovery until after disposition of the motion to dismiss. Supp.App. 4.

**20.** *Church of Scientology v. Foley, supra* note 1 (order staying discovery, July 22, 1977), Record on Appeal at 17.

**21.** App. 30.

**22.** *Church of Scientology v. Foley, supra* note 2, App. 60.

**23.** *Church of Scientology v. Foley, supra* note 1, at 5.

**24.** *Id.* at 5–16.

**25.** 28 U.S.C. § 46(c) (Supp. II 1976).

a hearing or rehearing [*en banc*] is not favored and ordinarily will not be ordered except (1) when consideration by the full court is necessary to secure or maintain uniformity of its decisions, or (2) when the proceeding involves a question of exceptional importance.[26]

Rule 35 governs all *en banc* hearings and rehearings. To be sure, its criteria are not entirely free from ambiguity, but an examination of the statutory and judicial developments culminating in promulgation of the rule, and of the more recent decisions construing its mandate, makes clear that courts of appeals are to function principally through divisions of three judges. Exceptions are appropriate only in rare instances,

and, as we shall see, the instant case is not one of them.

## A. The Development of En Banc Review

From the moment the federal courts of appeals were created in 1891,[27] the primary decisionmaking unit was statutorily limited to the three-judge panel.[28] Indeed, while the appointment of a fourth appellate judge to three circuits in 1911[29] stirred debate[30] over whether the courts of appeals could ever function as a whole rather than by three-judge divisions, it was not until 1940 —almost half a century after federal appeals courts came into existence—that the Supreme Court sanctioned use of the *en banc* tribunal.[31]

---

**26.** Fed.R.App.P. 35(a).

**27.** Act of March 3, 1891, ch. 517, § 2, 26 Stat. 826 (1891). The courts of appeal should not be confused with the original circuit courts, which also initially made use of a three-judge panel. A detailed account of the evolution of the federal courts may be found in C. Wright, A. Miller, & E. Cooper, Federal Practice §§ 3503–3504 (1975 ed.). For present purposes, however, a brief history of the precursors of the modern courts of appeals will suffice.

The circuit courts were created by the Judiciary Act of 1789, ch. 20, § 4, 1 Stat. 73. This legislation—in which Congress for the first time exercised the power granted it under Art. III, § 1, of the Constitution to establish the lower federal courts—provided for thirteen district and three circuit courts. The latter had both original and appellate jurisdiction. There were, however, no circuit judges as such; the circuit courts were conducted by panels consisting of two Supreme Court justices "riding circuit" and the judge of the district in which a given session was convened. Judiciary Act of 1789, ch. 20, § 4, 1 Stat. 73. The regular panel was reduced to one Supreme Court justice and one district judge in 1793. Act of March 2, 1793, ch. 22, § 1, 1 Stat. 333. It was not until 1869 that Congress established circuit judgeships; by the Act of April 10, 1869, ch. 22, § 2, 16 Stat. 44, one judge was assigned to each circuit.

The origin of the current system can be traced to the creation of federal-question jurisdiction in 1875. Act of March 3, 1875, ch. 137, 18 Stat. 470. The resultant increase in caseloads necessitated restructuring of the judiciary and concomitant creation of the courts of appeals. See C. Wright, A. Miller, & E. Cooper, *supra*, § 3504 at 11; Bickel, *The Caseload of the Supreme Court* at 3 (1973); Hart & Wechsler, *The Federal Courts and the Federal Sys-*

*tem*, at 40–41 (Bator, Mishkin, Shapiro & Wechsler ed. 1973). Although the original circuit courts survived the 1891 legislation that act terminated their appellate jurisdiction, Act of March 3, 1891, ch. 517, § 4, 26 Stat. 826 (1891); they were abolished in 1911, and their original jurisdiction was transferred to the district courts. Act of March 3, 1911, ch. 231, 36 Stat. 1087.

**28.** Act of March 3, 1891, ch. 517, §§ 2, 4, 26 Stat. 826 (1891).

**29.** Act of March 3, 1911, ch. 231, § 118, 36 Stat. 1087.

**30.** The rather complex situation was explained by the Supreme Court in *Textile Mills Sec. Corp. v. Commissioner*, 314 U.S. 326, 62 S.Ct. 272, 86 L.Ed. 249 (1941):

If § 117 [of the Judicial Code] were to be ready [*sic*] literally, the circuit court of appeals was to "consist" of only three judges in spite of the fact that Congress had already provided in some circuits for more than three circuit judges. Clearly, where there were four, all could not be members of a court of three. Yet there was plainly inferable a Congressional purpose to constitute in some circuits a circuit court of appeals of four judges. *Id.* at 330, 62 S.Ct. at 275, 86 L.Ed. at 255–256 (footnotes omitted).

**31.** As of 1938, all but two of the circuit courts of appeals had more than three judges. Comment, *In Banc Procedures in the United States Courts of Appeals*, 43 Ford.L.Rev. 401, 402 (1974); Note, *En Banc Hearings in the Federal Courts of Appeals: Accommodating Institutional Responsibilities*, 40 N.Y.U.L.Rev. 563, 570 (1965).

In that year, the Third and the Ninth Circuits disagreed over the propriety of holding hearings before a court's full membership.[32] The Ninth Circuit held that "no more than three judges [could] sit in the Circuit Court of Appeals."[33] The Third Circuit, on the other hand, ruled that *en banc* sittings were permissible in "exceptional cases ... [w]here ... there is a difference in view among the judges upon a question of fundamental importance."[34] The Supreme Court resolved the conflict by affirming the Third Circuit's understanding,[35] thus approving for the first time the use of the *en banc* proceeding. The Court, however, agreed that an *en banc* sitting was not to be the norm; rather, it was a special technique designed to eliminate "[c]onflicts within a circuit"[36] and to promote "more effective judicial administration."[37]

Congress, in turn, confirmed the Court's interpretation of earlier legislation by the enactment in 1948 of 28 U.S.C. § 46(c).[38] Again, the leading role of the three-judge panel was emphasized:

Cases and controversies shall be heard and determined by a court or division of not more than three judges unless a hearing or rehearing before the court *en banc* is ordered by a majority of the circuit judges of the circuit who are in active service.[39]

As the statutory language suggested, this section was intended to "continue[ ] the tradition of a three-judge appellate court and make[ ] the decision of a division, the decision of the court, unless rehearing in banc is ordered."[40] Above all, as the Supreme Court was soon thereafter to observe, Congress was concerned with "preserving the 'tradition' of the three-judge courts against further inroads."[41]

Some years later, the Court put to rest any lingering doubts about the paramount importance of the three-judge court and the concomitant limitations on resort to *en banc* decisionmaking. The Court admonished:

*En banc* courts are the exception, not the rule. They are convened only when extraordinary circumstances exist that call for authoritative consideration and decision by those charged with the adminis-

---

**32.** See *Lang's Estate v. Commissioner*, 97 F.2d 867 (9th Cir.), *certified question answered*, 304 U.S. 264, 58 S.Ct. 880, 82 L.Ed. 1331 (1938), *rev'd, sub nom. Textile Mills Sec. Corp. v. Commissioner, supra* note 30; *Commissioner v. Textile Mills Sec. Corp.*, 117 F.2d 62 (3d Cir. 1940) (*en banc*), *aff'd*, 314 U.S. 326, 62 S.Ct. 272, 86 L.Ed. 249 (1941).

**33.** *Lang's Estate v. Commissioner, supra* note 32, 97 F.2d at 869.

**34.** *Commissioner v. Textile Mills Sec. Corp., supra* note 32, 117 F.2d at 71.

**35.** *Textile Mills Sec. Corp. v. Commissioner, supra* note 30.

**36.** 314 U.S. at 335, 62 S.Ct. at 277–278, 86 L.Ed. at 258.

**37.** *Id.*

**38.** Act of June 25, 1948, ch. 646, 62 Stat. 878, now codified at 28 U.S.C. § 46(c) (Supp. II 1976).

**39.** *Id.*

**40.** Revision of Federal Judicial Code, Preliminary Draft (of H.R.3498, 79th Cong., 1st Sess.) Committee Print (1949), quoted in *Western Pac. R. R. Corp. v. Western Pac. R. R. Co.*, 345 U.S. 247, 256 n.13, 73 S.Ct. 656, 660 n.13, 97 L.Ed. 986, 993 n.13 (1952).

**41.** *Western Pac. R. R. Corp. v. Western Pac. R. R. Co., supra* note 40, 345 U.S. at 256, 73 S.Ct. at 661, 97 L.Ed. at 994. In *Western Pacific*, litigants sought to establish a statutory right to compel each member of a court of appeals to give formal consideration to an application for rehearing *en banc*. The Supreme Court held that the courts of appeals need not adopt any particular procedure, but must allow parties to suggest rehearings *en banc* to the judges authorized to initiate such proceedings. *See id.* at 249–250, 268, 73 S.Ct. at 657–658, 666, 97 L.Ed. at 990, 999. In reaching this conclusion, the Court declared that it was desirable to allow the judges " 'to provide for a court of more than three judges when in their opinion *unusual circumstances* make such action advisable.' " *Id.* at 251, 73 S.Ct. at 658, 97 L.Ed. at 991, quoting Annual Report of Attorney General (1938) at 231 (footnote omitted) (emphasis supplied).

tration and development of the law of the circuit.[42]

## B. *Interpretations of Rule 35*

The original view of limited use of the *en banc* court of appeals has frequently been mirrored in judicial opinions issued since promulgation of Rule 35. There is now general agreement among the circuits that the "truly extraordinary"[43] cases meriting *en banc* treatment are those involving "issue[s] likely to affect many other cases"[44] —in other words, those of real significance to the legal process as well as to the litigants.[45] Contrary to the view one must perforce infer from the court's decision today, the *en banc* court is not an institution for monitoring panel decisionmaking; it flies in the face of both the intent of Congress and Supreme Court precedent to use the Rule 35 procedure " 'merely' to correct individual injustices or mistakes."[46] And

while Rule 35 looks to preserving the uniformity of a circuit's decisions, the courts agree that the availability of *en banc* rehearings to cure intra-circuit conflicts does not justify "a vote for reconsideration by the entire court merely because [a judge] disagrees with the result reached by the panel."[47]

The need for judicial restraint in invoking the *en banc* mechanism is readily understood. Because it engages the attention of every active judge, consideration of a case *en banc* drains judicial resources while burdening the litigants with added expense and delay.[48] And because it often leads to a multiplicity of opinions, a too-frequent corollary of *en banc* decisionmaking is the inability to offer authoritative guidance,[49] the *raison d'etre* of the procedure. In this light, it is hardly surprising that Rule 35 explicitly declares that *en banc* "hearing or rehearing is not favored."[50] On the con-

**42.** *United States v. American-Foreign S. S. Corp.*, 363 U.S. 685, 689, 80 S.Ct. 1336, 1339, 4 L.Ed.2d 1491, 1495 (1960). This admonition is also reflected in subsequent opinions dealing with related subjects. See *Moody v. Albemarle Paper Co.*, 417 U.S. 622, 626, 94 S.Ct. 2513, 2516, 41 L.Ed.2d 358, 362 (1974).

**43.** *Boraas v. Village of Belle Terre*, 476 F.2d 806, 829 (2d Cir. 1973) (statement of Mansfield, J.).

**44.** *Walters v. Moore-McCormack Lines, Inc.*, 312 F.2d 893, 894 (2d Cir. 1963) (statement of Lumbard, C. J.).

**45.** See *Gilliard v. Oswald*, 557 F.2d 359 (2d Cir. 1977) (statement of Kaufman, C. J.); *Galella v. Onassis*, 487 F.2d 986, 1004 (2d Cir. 1973); *id.* at 1005 (dissenting opinion); *Eisen v. Carlisle & Jacqueline*, 479 F.2d 1005, 1021–1022 (2d Cir. 1973) (dissenting opinion); *Boraas v. Village of Belle Terre, supra* note 43, 476 F.2d at 829 (statement of Mansfield, J.); *United States v. Rosciano*, 499 F.2d 173, 174 (7th Cir. 1974) (*en banc*); *United States v. Page*, 302 F.2d 81, 86 (9th Cir. 1962) (*en banc*) (pre-Rule 35 decision).

**46.** *Galella v. Onassis, supra* note 45, 487 F.2d at 1005 (dissenting opinion), quoting *Eisen v. Carlisle & Jacqueline, supra* note 45, 479 F.2d at 1021–1022 (dissenting opinion). In the exceptional case, however, an *en banc* rehearing may be appropriate to cure gross individual injustice. See *Eisen v. Carlisle & Jacqueline, supra* note 45, 479 F.2d at 1021 n.2 (dissenting opinion). Indeed, Rule 35 directs that "ordinarily"

a rehearing will not be ordered in the absence of its two enumerated factors; it does not establish a blanket rule.

**47.** *Gilliard v. Oswald, supra* note 45, 557 F.2d at 359 (statement of Kaufman, C. J.). Accord, cases cited *supra* note 45.

**48.** See *Gilliard v. Oswald, supra* note 45, 557 F.2d at 359 (statement of Kaufman, C. J.); *Galella v. Onassis, supra* note 45, 487 F.2d at 1005 (per curiam); *Eisen v. Carlisle & Jacqueline, supra* note 45, 479 F.2d at 1021–1022 (dissenting opinion); Maris, *Hearing and Rehearing Cases In Banc*, 14 F.R.D. 91, 96 (1954); Comment, *In Banc Procedures in the United States Courts of Appeals*, 43 Ford.L.Rev. 401, 417–418 (1974). The degree to which *en banc* rehearings are disfavored is illustrated by statistics for fiscal 1980. In that year, 23,200 appeals were filed in the federal courts of appeals; and 10,598 were orally heard or submitted on briefs, of these only 65 cases were heard *en banc*. See 1980 Annual Report of the Director, Administrative Office of the United States Courts at 43, Table 1; 49, Table 7.

**49.** See *Gilliard v. Oswald, supra* note 45, 557 F.2d at 359 (statement of Kaufman, C. J.); Comment, *In Banc Procedures in the United States Courts of Appeals*, 43 Ford.L.Rev. 401, 417 & n.162 (1974).

**50.** Fed.R.App.P. 35(a), quoted in relevant part in text *supra* at note 26.

trary, the collective wisdom of the federal judiciary is that *en banc* review must be soundly justified, else the game will not be worth the candle.

In sum, the history of the *en banc* practice, the plain language of Rule 35, and consistent judicial interpretation of the purposes and permissible uses of *en banc* courts are in complete accord: barring extraordinary circumstances, only three-judge panels may appropriately hear and decide cases coming before the courts of appeals.

## III. THE PRESENT CASE

The District Court dismissed the Church's action solely on the ground that it was barred by the District of Columbia statute of limitations applicable to actions for libel or slander.[51] In the court's view, the Church's complaint "sound[ed] most nearly in defamation," and was intercepted by the local one-year limitation on actions therefor.[52] The dispute on appeal is whether the Church had a legitimate claim other than for defamation, and thus is able to benefit from the statute's residual provision of three years for actions "for which a limitation is not otherwise specifically prescribed."[53]

### A. The Possible Claims

Three potential claims have been suggested: infringement of rights secured to the Church by the First and Fifth Amendments; breach of a due-care duty implicit in whatever federal statute or regulation purportedly authorized the activities in which appellees engaged; and common law negligence in the formation of governmental files. If any one of these claims is valid, the three-year limitation period may be legally viable.[54] The issue, then, is whether the Church could have supported a claim for relief under one or more of these theories.[55] I see no reason whatsoever for summoning this court's *en banc* authority to conduct that inquiry.

Certainly no question justifying an *en banc* decision is posed by the Church's constitutional claims.[56] It is well settled that a cause of action for money damages may be

---

51. *Church of Scientology v. Foley, supra* note 2, App. 60. Since there is no federal statute of limitations applicable to the federal claims in suit, the court properly looked for the most analogous District of Columbia limitation. *Runyan v. McCrary*, 427 U.S. 160, 180, 96 S.Ct. 2586, 2599, 49 L.Ed.2d 415, 430–431 (1976); *Johnson v. Railway Express Agency*, 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295, 302–303 (1975); *UAW v. Hoosier Cardinal Corp.*, 383 U.S. 696, 701–704, 86 S.Ct. 1107, 1110–1113, 16 L.Ed.2d 192, 197–199 (1966); *Cope v. Anderson*, 331 U.S. 461, 463, 67 S.Ct. 1340, 1341, 91 L.Ed. 1602, 1606–1607 (1947). Whether, however, it picked the right provision is another matter.

52. *Church of Scientology v. Foley, supra* note 2, App. 60. In relevant part, the District of Columbia statute of limitations provides:

> Except as otherwise specifically provided by law, actions for the following purposes may not be brought after the expiration of the period specified below from the time the right to maintain the action accrues: …
> (4) for libel [or] slander, …—1 year; …
> (8) for which a limitation is not otherwise specially prescribed—3 years ….

D.C.Code § 12–301 (1973).

53. See D.C.Code § 12–301(8) (1973), quoted *supra* note 52. The case was submitted to us on the theory that no cause of action accrued

until the Church became aware of the memorandum in 1975. Compare, *e. g., Fitzgerald v. Seamans* 180 U.S.App.D.C. 75, 83–86, 553 F.2d 220, 228–231 (1977); *Jones v. Rogers Memorial Hosp.*, 143 U.S.App.D.C. 51, 52–53, 442 F.2d 773, 774–775 (1971); *Emmett v. Eastern Dispensary & Cas. Hosp.*, 130 U.S.App.D.C. 50, 55–58, 396 F.2d 931, 936–939 (1967). I intimate no view in this regard.

54. See the discussion in note 65 *infra*.

55. "[I]n appraising the sufficiency of the complaint [federal courts] follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80, 84 (1957). Accord, *Haines v. Kerner*, 404 U.S. 519, 520–521, 92 S.Ct. 594, 596, 30 L.Ed.2d 652, 654 (1972); *Jenkins v. McKeithen, supra* note 4, 395 U.S. at 421–422, 89 S.Ct. at 1849, 23 L.Ed.2d at 416–417; *Sass v. District of Columbia*, 114 U.S.App.D.C. 365, 366, 316 F.2d 366, 367 (1963).

56. See text *supra* at note 14.

implied directly from either the First or the Fifth Amendment.[57] The issue here is not of significant import; it is simply whether proof of the events the Church complains of would establish official misconduct rising to the level of constitutional transgression.[58] That question is largely factual, and the answer could have little if any impact on proceedings other than those at hand.[59] Consequently, the constitutional issues do not merit use of the special decisionmaking power of the full court.

The further question whether appellees have disregarded a statutorily-imposed obligation to exercise reasonable care involves very similar considerations. This court at least twice previously has held that such a duty, and a concomitant remedy for its breach, may follow from imposition of a

statutory responsibility to manage governmental records,[60] and the panel majority felt that perhaps the Church could show that such a duty existed in this case.[61] The panel decision forged no novel doctrine, nor did it conflict with our precedents. I fail to see how the panel's remand for exploration of this avenue to possible relief warrants *en banc* review.

Nor, in my view, does the Church's common law theory of liability deserve *en banc* treatment. The Church suggests that there was a nonfederal duty, grounded in District of Columbia law, to use due care in assembling and maintaining federal records.[62] But we no longer have either the responsibility or the prerogative to fashion the common law of the District of Columbia,[63] or to

---

**57.** The Supreme Court's decision in *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 395–397, 91 S.Ct. 1999, 2004–2005, 29 L.Ed.2d 619, 626–627 (1971), definitively established that a cause of action for money damages may be implied directly from the Constitution. *Bivens* dealt with the Fourth Amendment, but subsequently the Court has held that causes of action similarly may be derived from the Fifth. See *Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979). See also, *e. g., Payne v. District of Columbia*, 182 U.S.App.D.C. 188, 559 F.2d 809 (1977); *United States ex rel. Moore v. Koelzer*, 457 F.2d 892, 894 (3rd Cir. 1972); *Bethea v. Reid*, 445 F.2d 1163, 1164–1165 (3d Cir. 1971), *cert. denied*, 404 U.S. 1061, 92 S.Ct. 747, 30 L.Ed.2d 749 (1972); *States Marine Lines, Inc. v. Shultz*, 498 F.2d 1146, 1155 (4th Cir. 1974); *Revis v. Laird*, 391 F.Supp. 1133, 1138–1139 (E.D.Calif.1975); *Patmore v. Carlson*, 392 F.Supp. 737, 740 (E.D.Ill. 1975). This court has also held that a cause of action may be implied from the First Amendment. *Dellums v. Powell*, 184 U.S.App.D.C. 275, 302–304, 566 F.2d 167, 194–196 (1977). Although the Supreme Court has not itself addressed that question, its decision in *Davis* suggests that a valid claim may exist for any violation of a constitutional right, at least where Congress has provided no other suitable remedy.

**58.** Decisions involving factual questions, which are unlikely to have any significant precedential effect, are inappropriate for *en banc* review. See cases cited *supra* note 45.

**59.** As noted earlier, see text *supra* at notes 43–46, an *en banc* decision is not justified in such instances. See cases cited *supra* notes 44–45.

**60.** *Tarlton v. Saxbe*, 165 U.S.App.D.C. 293, 299–303, 507 F.2d 1116, 1122–1126 (1974); *Menard v. Saxbe*, 162 U.S.App.D.C. 284, 296, 498 F.2d 1017, 1029 (1974).

**61.** *Church of Scientology v. Foley, supra* note 1, at 7–12.

**62.** That question crept into the case when the Church invoked diversity of citizenship as one of the District Court's jurisdictional bases. See note 14 *supra*. I recognize that the federal common law might also provide a cause of action in this case, see generally *Wheeldin v. Wheeler*, 373 U.S. 647, 83 S.Ct. 1441, 10 L.Ed.2d 605 (1965); *United States v. Standard Oil Co.*, 332 U.S. 301, 67 S.Ct. 1604, 91 L.Ed. 2067 (1947); *Clearfield Trust Co. v. United States*, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1945), but the issue is raised neither by the parties nor in the panel opinion, and it therefore need not be addressed on this appeal.

**63.** The District of Columbia Court Reorganization Act of 1970, Pub.L.No.91–358, tit. I, § 111, 84 Stat. 475, constituted the District of Columbia Court of Appeals "[t]he highest court of the District of Columbia," D.C.Code § 11–102 (1973), a role this court theretofore occupied. As we have observed, "[t]hat court, and not this court, is now the final expositor of local law." *Thompson v. United States*, 179 U.S. App.D.C. 76, 80, 548 F.2d 1031, 1035 (1976) (footnote omitted); and our decisions subsequent to the effective date of the Act do not bear the imprimatur of binding interpretations in that area. *Bethea v. United States*, 365 A.2d 64, 71 (D.C.App.1976); *District of Columbia v. Schwerman Trucking Co.*, 327 A.2d 818, 820–821 (D.C.App.1974); *Small v. United States*,

act *en banc* to maintain its uniformity. Indeed, our obligation as a federal court dealing with a nonfederal claim is to take nonfederal law just as it is.[64] Against this background, I cannot conceive of anything less appropriate for *en banc* consideration than a matter of purely local law.[65]

## B. *A Proposed Disposition*

While it seems clear that this case presents no issue worthy of *en banc* review, the question of how properly to dispose of it remains. Usually, of course, courts do not face that need because they simply refuse to accord inappropriate cases an *en banc* audience. Occasionally, however, courts have discovered, after convening *en banc*, viewing briefs and hearing oral argument, that a given case does not warrant consideration by every active judge. In just such a

situation the Seventh Circuit withdrew its order granting a rehearing, dissolved the *en banc* court and reinstated the panel opinion.[66] And this court, when confronted by a similar problem, concluded that because of the limited importance of the case it was inappropriate to provide detailed "exposition *en banc* of the legal points beyond that already provided in the majority and minority opinions of the panel," [67] and accordingly reissued the panel opinions.[68] An obvious parallel is the Supreme Court's practice of dismissing writs of certiorari when, after closer study of the case, it becomes evident that the writ was granted on a mistaken impression of the record; [69] that the case is an unsuitable one in which to issue an authoritative decision; [70] or that the case is simply too unimportant to merit the Court's attention.[71]

304 A.2d 641, 643 (D.C.App.1973); *M. A. P. v. Ryan*, 285 A.2d 310, 312 (D.C.App.1971).

**64.** *Tuxedo Contractors, Inc. v. Swindell-Dressler Co.*, 198 U.S.App.D.C. 426, 428 n.14, 613 F.2d 1159, 1161 n.14 (1979); *Lee v. Flintkote Co.*, 193 U.S.App.D.C. 121, 124 & n.14, 593 F.2d 1275, 1278 & n.14 (1979).

**65.** Appellees have implied that the panel decision conflicts with *District of Columbia Armory Bd. v. Volkert*, 131 U.S.App.D.C. 74, 402 F.2d 215 (1968). See Supplemental Brief for Appellees at 13–18. Close comparison satisfies me that there is no inconsistency between the two. *Volkert* held that a suit claiming property damage was governed by the District's three-year limitation on actions "for the recovery of damages for an injury to real or personal property," D.C.Code § 12–301(3) (1973), despite an assertion of alternative contract and tort theories of liability. "Where," the court said, "real or personal property is injured and suits are brought to recover damages, we think Congress has said quite clearly that 3 years is the limitation period, whether contract (sealed or unsealed, written or oral) or tort be made the legal vehicle of recovery." 131 U.S.App.D.C. at 79, 402 F.2d at 220. Here, however, the one-year limitation affects the Church only to the extent that recovery is sought for "libel" or "slander." D.C.Code § 12–301(4) (1973), quoted in relevant part *supra* note 52. The Church alleges that the Foley memorandum not only curtailed its ability to attract adherents and contributions, but also precipitated governmental discrimination and harassment frustrating exercise of its First and Fifth Amendment rights and necessitating large financial expenditures to preserve them. Complaint, ¶¶ 18–20, App. 7–8; Amended Complaint, ¶¶ 18, 20, App. 35–

36. These constitutional claims are not congruent with libel or slander, nor is the panel decision in doctrinal collision with *Volkert*.

**66.** *United States v. Rosciano, supra* note 45, 499 F.2d at 175.

**67.** *Verkouteren v. District of Columbia*, 139 U.S.App.D.C. 303, 305, 433 F.2d 461, 463 (1970).

**68.** *Id.* Moreover, in *Bulluck v. Washington*, 152 U.S.App.D.C. 39, 65, 468 F.2d 1096, 1122 (1972), we dissolved our order granting *en banc* rehearing and continued in effect the panel decision because we were equally divided on the merits.

**69.** *Burrell v. McCray*, 426 U.S. 471, 472, 96 S.Ct. 2640, 2641, 48 L.Ed.2d 788–789 (1976) (concurring opinion); *Bostic v. United States*, 402 U.S. 547, 548, 91 S.Ct. 2174, 29 L.Ed.2d 102, 103 (1971); *Johnson v. Massachusetts*, 390 U.S. 511, 88 S.Ct. 1155, 20 L.Ed.2d 69, 70 (1968); *The Monrosa v. Carbon Black Export, Inc.*, 359 U.S. 180, 183, 79 S.Ct. 710, 713, 3 L.Ed.2d 723, 725 (1959).

**70.** *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 365–366, 95 S.Ct. 449, 461, 42 L.Ed.2d 477, 492 (1974) (dissenting opinion); *DeBacker v. Brainard*, 396 U.S. 28, 30–31, 90 S.Ct. 163, 165, 24 L.Ed.2d 148, 152–153 (1969); *Massachusetts v. Painten*, 389 U.S. 560, 561, 88 S.Ct. 660, 661, 19 L.Ed.2d 770, 771 (1968).

**71.** *Piccirillo v. New York*, 400 U.S. 548, 549, 91 S.Ct. 520, 521, 27 L.Ed.2d 596, 598 (1971); *Rudolph v. United States*, 370 U.S. 269, 270, 82 S.Ct. 1277, 1278, 8 L.Ed.2d 484, 486 (1962).

Similar action, I believe, is demanded here. Basic rules of judicial housekeeping admonish courts to avoid addressing issues they need not resolve. Since reaching the merits here can serve none of the accepted purposes of the *en banc* process, there is no occasion for a full-court decision of the case. On the contrary, the court would do well to conserve its resources and preserve the authority of its *en banc* voice by reserving both for those fundamentally important cases where the collective attention and wisdom of its full bench is both necessary and appropriate.

In my view, no issue meriting *en banc* attention has been tendered by the parties or uncovered by the court. Rehearing *en banc*, I think, was improvidently granted. I would therefore dissolve this *en banc* tribunal and reinstate the panel opinions.