Donald G. JOLLY, Appellant,

v.

E. J. LISTERMAN, Regional Representative, Bureau of Retirement and Survivors, et al.

No. 80–2265.

United States Court of Appeals,
District of Columbia Circuit.

April 23, 1982.

Before ROBINSON, Chief Judge, and WRIGHT, TAMM, MacKINNON, ROBB, WILKEY, WALD, MIKVA, EDWARDS and GINSBURG, Circuit Judges.

## ORDER

PER CURIAM.

Appellant's suggestion for rehearing *en banc* has been circulated to the full Court. A majority of the Court has not voted in favor thereof.* On consideration of the forgoing, it is

ORDERED by the Court *en banc* that the aforesaid suggestion is denied.

The following statements are attached:

Joint statement of Circuit Judges TAMM and WILKEY setting forth their reasons for voting against rehearing *en banc*.

Statement of Chief Judge SPOTTSWOOD W. ROBINSON, III, with whom Circuit Judge GINSBURG joins, concurring in denial of rehearing *en banc*.

Statement of Circuit Judge EDWARDS setting forth his reason for voting to rehear this case *en banc*.

---

* Circuit Judge Bork did not participate in these    proceedings.

TAMM and WILKEY, Circuit Judges:

In deciding whether it is appropriate to grant an *en banc* hearing in a particular case, this court is guided by Rule 35(a) of the Federal Rules of Appellate Procedure:

> Such a hearing or rehearing is not favored and ordinarily will not be ordered except (1) when consideration by the full court is necessary to secure or maintain uniformity of its decisions, or (2) when the processing involves a question of exceptional importance.

Contrary to Judge Edwards' impressions,[1] there is no question of "uniformity" between the court's opinion in this case and other decisions of this court, and, while a gross injustice arising from some error in the analysis of a panel decision might constitute "a question of exceptional importance" in the hypothetical instance, there was no such error in this case.

## A. *Uniformity*

The contention, raised in Judge Edwards' statement below, that "the majority opinion is inconsistent with a prior memorandum decision in this case issued by a different panel of this court in December 1979"[2] is without foundation. The decision to which Judge Edwards refers[3] remanded Jolly's case to the Social Security Administration (SSA) for reconsideration of the propriety of his discharge. It did give footnote reference to agency personnel guidelines, noting that they "provide for an attempt to place an employee in a more suitable position if his or her performance is unsatisfactory;"[4] however, contrary to our dissenting colleague's impression, the panel at that time made no ruling that the provision required Jolly's reassignment. The memorandum decision simply expressed an opinion that the agency's reconsideration of Jolly's case, "in light of the reduced charges," might include an examination of this particular guideline.

The guideline-based argument was raised again on Jolly's appeal from the SSA's reconsideration. However, upon closer examination of the provisions in issue, and for reasons set forth in detail in the majority's opinion in this case[5] we did not find that particular argument persuasive. Simply, the "directive" which Judge Edwards identifies appears in the context of guidelines relating to grants for denials of within-grade increases. *None of these have anything to do with discharges or disciplinary actions.* It was hardly inconsistent with the prior decision for us also to notice the guidelines raised and, upon taking a close look at their context, to find them inapplicable to Jolly's case.

## B. *The Issue of "Gross Miscarriage of Justice"*

Judge Edwards' position that this court's denial of a rehearing *en banc* places an "imprimatur on a miscarriage of justice"[6] is based only on his personal conviction that Jolly was discharged for "blowing the whistle." It is significant that of all who have reviewed the matter, Judge Edwards stands alone in this factual conclusion. The assertion that the agency had acted in a retaliatory manner was raised before and rejected by no fewer than four fact-finding bodies: (1) an independent advisory arbitrator, (2) the Social Security Administration, (3) the Civil Service Commission's Federal Employee Appeals Authority (FEAA), an independent adjudicatory body which held its own public hearings in the matter, and (4) the district court. Although he admits that this court should not reweigh the evidence or retry the facts, Judge Edwards apparently is convinced that this court properly may override the factual conclusions of those several fact-finders who determined that

1. *See* his dissenting statement below.

2. Dissenting statement at 1312.

3. *Jolly v. Listerman*, 610 F.2d 999 (D.C.Cir., 1979), *reprinted in Jolly v. Listerman*, 672 F.2d 935 at 959 App. (D.C.Cir., 1982).

4. *Id.* at 959 n.1.

5. *Jolly v. Listerman*, 672 F.2d at 944–945 (D.C. Cir., 1982).

6. Dissenting statement at 1311.

there was sufficient evidence in the record to support Jolly's discharge, notwithstanding his claims of retaliatory motives. Judge Edwards dissented from our determination not to retry the facts as a panel, and dissents again from our refusal to do so as a full court.

The "anomaly" which Judge Edwards identifies in his own comparison of this court's ultimate decision in *Jolly* and the Fifth Circuit's opinions in *Porter v. Califano*[7] and *Porter v. Schweiker*[8] is simply an outgrowth of his desire to find factual conclusions where there are none. The *Jolly* opinion is not irreconcilable with either of the Fifth Circuit's *Porter* opinions. *Porter I* held that the district court erred in granting summary judgment against constitutional claims made by the appellant when *no evidentiary hearing had been held* to settle what the appellate court saw as genuine and material factual issues.[9] (Jolly, by contrast, was afforded an abundance of hearings to settle those factual issues.) There was similarly no finding on the facts in *Porter II*, the court holding only that a settlement agreement did not moot Porter's challenge, and that dismissal was therefore inappropriate *without further fact resolution.*[10] Judge Edwards' conclusion that "[t]he Fifth Circuit has ruled that it is unlawful for the government to discipline an employee who protests the discharge of a 'whistle-blower,'" has no foundation in these opinions. The dissent simply has read factual rulings into holdings based on the very existence of *unresolved issues of fact.*

### C. Conclusion

The basis for the district court's summary judgment, from which Jolly's appeal was made to this court, is clear. It followed the factual conclusions drawn from independent adjudications at several fact-finding levels. It was not a summary judgment

7. 592 F.2d 770 (5th Cir. 1979) [*Porter I*].

8. 648 F.2d 310 (5th Cir. 1981) [*Porter II*].

9. *Porter I*, 592 F.2d at 777.

10. *Porter II*, 648 F.2d at 312.

1. Fed.R.App.P. 35(a).

from out of the blue but was founded on an extensive record. This court has not given a stamp of approval to an agency's retaliatory discipline, an action which would not be countenanced by any member of this court. Our opinion was premised on a clear conclusion that there was adequate support in the record for the findings that Jolly was discharged for a failure to achieve an acceptable level of performance in his assigned tasks, and that the agency's action was therefore within its discretion. An en banc rehearing in such a case is simply not required.

SPOTTSWOOD W. ROBINSON, III, Chief Judge, with whom GINSBURG, Circuit Judge, joins, concurring in denial of rehearing *en banc*:

An old adage warns that all too frequently hard cases make bad law. Perhaps it also should caution that making good law in hard cases ofttimes is hard on the decisionmakers. This appeal has engendered a sharp division on the court, and my vote against rehearing *en banc* has not come easily. Nonetheless, I think that disposition makes good law, that is, it effectuates a proper application of Appellate Rule 35(a)[1] to the case. I write briefly to elucidate this belief.

Hitherto I have recounted the evolution of *en banc* review in the federal courts of appeals, and expressed my conclusion that history and precedent demand reservation of *en banc* consideration for truly extraordinary cases.[2] I need not retrace that path here save to reiterate the view that full-court review is justified only in litigation "of real significance to the legal process as well as to the litigants."[3] No one would be so callous as to doubt that this appeal is of vital importance to Jolly, nor would anyone suggest that it is inconsequential if indeed

2. See *Church of Scientology v. Foley*, 205 U.S. App.D.C. 364, 365, 640 F.2d 1335, 1336 (1981) (dissenting opinion).

3. *Id.* at 370, 640 F.2d at 1341.

the panel did reach an erroneous result. But it neither trivializes Jolly's concern nor abdicates judicial duty to insist that this case does not call for *en banc* treatment.

For all of its emotional quality, the case is of no great moment to the legal process. At heart, the appeal is not about principles of law; it is about the ultimate meaning of subsidiary facts. The panel members did not disagree over the invalidity of any federal employee's discharge for "whistleblowing," but rather over whether the agency-employer had perpetrated a retaliatory firing in this instance. So heavily fact-dependent a case is especially inappropriate for *en banc* review. What could the court *en banc* hope to accomplish other than to say whether the particular set of events in suit amounted to prohibited retaliatory discharge? The panel produced two careful and detailed opinions in which the majority and the dissenting members surveyed the record and explained their differing interpretations. No jurisprudential value is enhanced by having the facts aired and debated again, this time before eleven judges instead of three. Nor is mere disagreement with the panel majority's outcome any warrant for *en banc* rehearing.[4]

Thus, while I respect the views that led Judge Edwards to dissent from the position of his panel colleagues, I strongly disagree with his thesis today. In declining to rehear the case *en banc*, the court does not "place its imprimatur on a miscarriage of justice."[5] We do not sit in judgment on the panel;[6] we do not sanction the result it reached. We decide no more than that the issues presented are not such that "consideration by the full court is necessary to secure or maintain uniformity of its decisions," or that "question[s] of exceptional importance" are involved.[7]

HARRY T. EDWARDS, Circuit Judge, dissenting:

This case involves a career civil servant, with a long and outstanding record of government service, who was fired when he "blew the whistle" on corrupt agency supervisors. By an equally divided vote, this court has denied appellant's request for a rehearing *en banc*. The court thus places its imprimatur on a miscarriage of justice that I fear may have invidious consequences extending beyond the unlawful discharge of Donald Jolly.

My view of the errors in the majority's legal analysis has been set forth in detail in a dissent to the panel's opinion. Nevertheless, I feel it necessary to write again at this juncture because of what I perceive to be a gross injustice caused by the result in this case. Even more importantly, however, because I find the panel majority opinion at odds with any meaningful scheme of appellate review, I believe it necessary to add a note about the nature and purpose of judicial review of agency personnel actions.

The record in this case makes clear that Jolly was fired for "blowing the whistle" on corrupt agency supervisors. The circumstances surrounding Jolly's dismissal indicate the retaliatory nature of the agency's actions. Jolly's employment record with the agency was virtually unblemished prior to his resignation from a management program and his public report of corrupt activities by agency officials shortly thereafter. Moreover, the two agency officials who were principally responsible for Jolly's termination were the same two officials he had accused of corrupt activities. The proceedings they instituted against Jolly were a sham from the outset. Unable to articulate legitimate reasons for Jolly's dismissal, the agency changed the charges against him no less than four times during the

---

**4.** *Id.*

**5.** Dissenting Opinion on Denial of Rehearing *En Banc* at 1311.

**6.** "[T]he *en banc* court is not an institution for monitoring panel decisionmaking." *Church of*

*Scientology v. Foley, supra* note 2, 205 U.S. App.D.C. at 370, 640 F.2d at 1341 (dissenting opinion).

**7.** Fed.R.App.P. 35(a).

course of the administrative proceedings and the ensuing litigation. Indeed, after significantly reducing the charges against Joly, and after having been instructed by a panel of this court to reconsider "the propriety of Jolly's dismissal in light of the reduced charges,"[1] the agency relied instead on *new* charges to defend its actions. These fluctuating charges by the agency accent, rather than hide, the fact that Jolly's termination was really based on his accusations of corruption within the agency.

The majority opinion, however, blindly accepts the most recent version of the charges offered by the Government without ever addressing Jolly's claim that he was the subject of a retaliatory discharge. The majority's decision stands in stark and disturbing contrast to two Fifth Circuit opinions concerning disciplinary actions by the same agency against one of Jolly's co-workers who protested Jolly's discharge. *See Porter v. Schweiker*, 648 F.2d 310 (5th Cir. 1981); *Porter v. Califano*, 592 F.2d 770 (5th Cir. 1979). The following anomaly, inexplicable I am sure to government agencies and employees alike, now exists: The Fifth Circuit has ruled that it is unlawful for the government to discipline an employee who protests ·the discharge of a "whistle-blower," while the D.C. Circuit has upheld the retaliatory discharge of the "whistle-blower" himself.

Finally, the majority opinion is inconsistent with a prior memorandum decision in this case issued by a different panel of this court in December 1979. In remanding the case for reconsideration of the propriety of Jolly's discharge, the first panel opinion correctly noted that the agency's regulations required the agency to attempt to reassign an employee to an alternative suitable position if his performance was alleged to be unacceptable.[2] Although the agency had— in scores of prior cases [3]—routinely followed this requirement by reassigning employees (in lieu of dismissing them), it made no such effort in this case. The majority nonetheless refuses to enforce the fundamental principle expressed by this court in *Doe v. Hampton*, 566 F.2d 265, 280 (D.C.Cir.1977), that "an agency must abide by its own regulations in effecting the removal of one of its employees."

In short, the decision in this case is a travesty because it reflects a callous disregard of the rights of a government employee, totally ignores claims of wrong-doing that were apparent to both the Fifth Circuit and a previous panel of this court, and produces a grossly unjust result.

At least as disturbing as the outcome in this case is the nature of the review provided by the majority. The majority opinion emphasizes the administrative proceedings already provided to Jolly below, the importance of deferring to agency discretion in personnel decisions like this one, and the limited nature of judicial review of such decisions. In doing so, the majority mistakenly equates *process* with *justice* and *fairness*, as if to suggest that the former always subsumes the latter. The majority also appears to equate a deferential standard of judicial review with no review at all.

The availability of procedures for challenging an employee's dismissal at the administrative level is one means of preventing and remedying unlawful discharges. An agency's adherence to certain formal procedures does not, however, mean that justice has been done, especially when the employee's charge has not been fully addressed during those proceedings.[4] In this case, Jolly's claim that he was discharged in

---

1. *Jolly v. Listerman*, 610 F.2d 999 (D.C.Cir. 1979), *reprinted in Jolly v. Listerman*, 672 F.2d at 959 app. (D.C.Cir.1982) (Edwards, J., dissenting).

2. *Id.* at 959 n.1 app.

3. *See* record evidence cited in *Jolly v. Listerman*, 672 F.2d at 953–954 (D.C.Cir.1982) (Edwards, J., dissenting).

4. Indeed, to the extent that reviewing courts are unduly persuaded by the amount of "process" a discharged employee has been accorded, greater administrative proceedings may actually leave discharged employees more vulnerable.

retaliation for speaking out about the corruption of his supervisors was peremptorily rejected in the decision below by the Federal Employee Appeals Authority. Nor have the courts provided any meaningful review of that claim. The District Court granted summary judgment to the Government without a word of explanation. The majority opinion of this court not only failed to acknowledge Jolly's legal argument, it did not even mention, in its recitation of the factual background of the case, that Jolly had publicly accused agency officials of corruption shortly before those officials instituted proceedings to have him dismissed.

While the majority is correct in asserting that this court should not "reweigh the evidence" or "retry the facts," *Jolly v. Listerman*, 672 F.2d at 943 (D.C.Cir.1982), the court is certainly under an obligation to determine whether, in light of the discharged employee's allegations and the evidence in the record, the agency's actions were arbitrary or capricious. This inquiry is independent of the question whether the agency followed the requisite procedures. *See* 5 U.S.C. § 706(2)(A), (D) (1976). And, while the arbitrary and capricious standard "is highly deferential, and presumes agency action to be valid," in conducting that review we do "not serve as a mere rubber stamp for agency decisions." *Lead Industries Association, Inc. v. EPA*, 647 F.2d 1130, 1145 (D.C.Cir.), *cert. denied*, 449 U.S. 1042, 101 S.Ct. 621, 66 L.Ed.2d 503 (1980). In upholding Jolly's dismissal without even addressing the most serious charge presented by him, the majority *has* rubber stamped the agency's decision. Reviewing the record with blinders on, it has eviscerated the arbitrary and capricious standard and provided judicial "review" in name only.

The majority's excessive deference to the agency plainly perverts the judicial function; regrettably, it is also almost certain to have a deleterious effect upon the agency as well. One important function of judicial review of actions by federal agencies, it seems to me, is to protect employees from reprisals for revealing corrupt activities of agency officials. By allowing Jolly's dismissal to stand, the court delivers a practi-

cal message to agency employees that is all too clear: It does not pay to report corruption or other illicit activity within the agency, particularly if it involves high-ranking officials who are in a position to retaliate. The court today tacitly demonstrates that it will accept such retaliation if the agency goes through the proper procedures and presents at least facially unobjectionable reasons for its actions (even if it takes four attempts to determine what its reasons are). The chilling effect of such a decision is obvious. The unfortunate result is that the agency stands to lose perhaps its greatest internal check on corruption and inefficiency—the forthright disclosures of unfearing and responsible agency employees. Surely this cannot "promote the efficiency of the service," as the FEAA concluded in upholding Jolly's dismissal. *See Jolly v. Listerman*, 672 F.2d at 939 (D.C.Cir.1982).

I do not mean to suggest that the retaliatory actions taken against Jolly are typical of this or any other federal agency. On the contrary, I would like to believe that agencies do not frequently discharge employees unjustly and that administrative procedures much more often than not prevent or correct the unjust actions that do occur. But in those cases in which it is clear that an agency has acted unlawfully and unjustly, rubber stamping its decision out of deference to the agency does not serve the agency's best interests. It undermines them.

One can only hope that the impact of today's decision will be limited. In this vein, it is worth recalling that four of six judges on two different panels of this court, and six judges on two different panels of the Fifth Circuit, have at least recognized the legitimacy of the charges asserted by Jolly. In the long run, this decision may well stand more as an aberrant example of injustice than as a meaningful precedent for agencies and courts. Unfortunately, even if this proves true, it will not correct the injustice suffered by Donald Jolly.

POSTSCRIPT

Although I greatly respect the opinion of my colleague, Chief Judge Robinson, and

share his view that we can ill-afford to indulge a loose standard for determining when to grant a petition for rehearing *en banc*, I firmly disagree with the position that he espouses in this case. If Rule 35 does not authorize a rehearing *en banc* in this case then no case should ever be reheard *en banc* by this court.

I have never urged that Rule 35 compels a rehearing *en banc* solely because there has been a "miscarriage of justice." This case should be reheard for all of the other reasons cited in my opinion. It is not irrelevant, however, that the result reached by the court produces a serious miscarriage of justice. Indeed, it would seem to me quite extraordinary for a court of law to act in disregard of such a result. Moreover, the miscarriage of justice in this case reflects an extreme *misapplication of the law*; it surely is not the business of judges to ignore such injustice in order to comply with a wooden thesis of finality.