UNITED STATES of America,
Appellant,

v.

Macio SINGLETON.

No. 83–2173.

United States Court of Appeals,
District of Columbia Circuit.

Suggestion May 3, 1985.

Opinions June 25, 1985.

Ed Wilhite, Washington, D.C., appointed by this court, was on Appellee's Suggestion for Rehearing En Banc.

Before ROBINSON, Chief Judge, and WRIGHT, TAMM, WALD, MIKVA, EDWARDS, GINSBURG, BORK, SCALIA and STARR, Circuit Judges.

## ORDER

PER CURIAM.

Appellee's suggestion for rehearing en banc, filed May 3, 1985, has been circulated to the full court. A majority of the judges in regular active service have not voted in favor thereof. Upon consideration of the foregoing, it is

ORDERED, by the court en banc, that the suggestion is denied.

Circuit Judges J. SKELLY WRIGHT, WALD, and MIKVA would grant the suggestion for rehearing en banc.

A statement of Circuit Judge HARRY T. EDWARDS, concurring in denial of rehearing en banc, joined by Chief Judge SPOTTSWOOD W. ROBINSON, III and Circuit Judge GINSBURG, is attached.

A statement of Circuit Judge BORK, joined by Circuit Judge SCALIA, is attached.

A statement of Circuit Judge J. SKELLY WRIGHT, dissenting from denial of rehearing en banc, joined by Circuit Judge MIKVA, is attached.

HARRY T. EDWARDS, Circuit Judge, with whom SPOTTSWOOD W. ROBINSON, III, Chief Judge and GINSBURG, Circuit Judge, join, concurring in denial of rehearing en banc:

I find it difficult to subscribe to the panel's decision in this case; however, I do not believe that the case should be reheard en banc.

In United States v. Singleton ("Singleton I"), 702 F.2d 1159 (D.C.Cir.1983), this court held that the District Court improperly granted a motion for a post-verdict judgment of acquittal. In the instant appeal, Singleton II, the panel majority held that our earlier decision had, in effect, also resolved the question whether the showup at which Singleton was identified as a robber violated his due process rights and thus rendered evidence of that identification inadmissible. Therefore, the majority reasoned, the law of the case precluded the District Court from considering the due process issue on retrial. Unlike the majority, I believe the issue before the court in Singleton I to have been sufficiently distinct from that raised in Singleton II, so that the law of the case doctrine was not applicable.[1]

Although I have serious doubts about the panel's decision, I am convinced that it does not alter the existing law of the circuit or create any new law. The decision does not impede the authority of the District Court to enter post-verdict judgments of acquittal based on the insufficiency of the evidence and does not change the standard of appellate review of such judgments, ar-

---

1. A court ought not invoke "law of the case" to deprive a litigant of a right to consideration and decision of a fundamental constitutional question. On such important matters, "litigants are entitled to have the law correctly applied to their lawsuits. The courts have a duty to use reasonable amounts of time to make sure that this is done. Deviation from this norm should occur only when there are exceptional reasons." Vestal, Law of the Case: Single Suit Preclusion, 1967 Utah L.Rev. 1, 31.

ticulated by this court *en banc* in *United States v. Singleton,* 702 F.2d 1182 (1983). Nor does it affect the legal standard to be used in determining whether a suggestive identification procedure violates due process. *See Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). Because consideration by the full court is not necessary "to secure or maintain [the] uniformity of [our] decisions" and because, despite the vital importance of this appeal to the appellant, no legal "question[s] of exceptional importance" are involved, *en banc* rehearing is not appropriate. FED.R.APP.P. 35(a).

By declining to rehear the case, however, "[w]e do not sit in judgment on the panel; we do not sanction the result it reached." *Jolly v. Listerman,* 675 F.2d 1308, 1311 (D.C.Cir.) (Robinson, C.J., concurring in denial of rehearing *en banc*) (footnote omitted), *cert. denied,* 459 U.S. 1037, 103 S.Ct. 450, 74 L.Ed.2d 604 (1982). We decide merely that, because the case does not present questions of " 'real significance to the legal process as well as to the litigants,' " review by the full court is not justified. *Id.* at 1310 (quoting *Church of Scientology v. Foley,* 640 F.2d 1335, 1341 (D.C.Cir.1981) (*en banc*) (dissenting opinion), *cert. denied,* 452 U.S. 961, 101 S.Ct. 3110, 69 L.Ed.2d 972 (1981)).

Statement of Circuit Judge BORK, joined by Circuit Judge SCALIA.

BORK, Circuit Judge:

Both the dissent from and the concurrence in the court's denial of the suggestion for rehearing *en banc* state that the panel erred by applying the doctrine of law of the case. It is noteworthy, however, that neither the dissent nor the concurrence gives an adequate reason why that is so. We think it worth adding a word to demonstrate that the panel majority's result was not merely allowable or correct but inevitable. It is always perilous in legal disputation to claim that a proof is so

rigorous as to deserve the name "mathematical." But we think we may claim that here. In fact, the governing principle in this case was first formulated by a geometer.

In *United States v. Singleton,* 702 F.2d 1159 (D.C.Cir.1983) (*"Singleton I"*) a panel majority reversed a judgment of acquittal entered by the district court after a jury verdict of guilty. Upon remand the district court granted a motion for a new trial and then granted a motion to suppress evidence. In *United States v. Singleton,* 759 F.2d 176 (D.C.Cir.1985) (*"Singleton II"*) the panel majority reversed the order to suppress on the ground that the law of the case, established in *Singleton I,* bound the district court to hold the evidence admissible.

The key evidence in *Singleton I* concerned a showup identification of Macio Singleton as an armed robber. The district court found that evidence so unreliable as to be insufficient to support the jury verdict. The issue before this court was the sufficiency of the evidence. After exhaustive analysis, the *Singleton I* majority held that the showup identification, which it assessed independently of the other evidence, was reliable. 702 F.2d at 1165–66. The majority said that it did not reach any due process question because no order suppressing evidence was before it. *Id.* at 1166 n. 23. That was formally correct. Nevertheless, reliability is the test both for the sufficiency of evidence to support a verdict and for the admissibility of evidence to survive a motion to suppress. *Id.* at 1166 n. 21. No reason appears why reliability should be judged differently under a due process standard than it is under a sufficiency standard. To uphold the suppression order in *Singleton II* we would have had to hold that another panel of this court was wrong on the question of reliability in *Singleton I* and that the judgment there should have been one of affirmance rather than reversal.[*]

* We could, of course, do just that if we thought "manifest injustice" had been done. For the

reasons stated in *Singleton II,* we do not think that. Our dissenting colleague has argued that

There seems to us no mode of analysis that can avoid the conclusion that *Singleton I* governed *Singleton II.* Indeed, our colleague who dissents today also dissented in *Singleton I.* He then recognized, though he was unhappy about it, that the *Singleton I* majority relied upon due process case law and that its analysis was "identical" to a due process analysis. 702 F.2d at 1174 n. 18. He displays no such recognition today, but we think he was clearly right in his characterization of the nature of the majority's reasoning and conclusions then. That identity determined the outcome of *Singleton II.*

When the district court upon remand considered the motion to suppress the showup identification under due process criteria, it was repeating precisely the analysis of the evidence's reliability already undertaken by this court in *Singleton I.* There was thus no occasion for us, in reviewing the suppression order, to apply a "clearly erroneous" standard. The issue was not factual but legal. The issue in *Singleton I* was reliability and the issue subsequently before the district court was reliability. In deciding that the district court was bound by the doctrine of law of the case to reach the same result as *Singleton I,* we therefore applied an ancient and self-evident maxim: "Things which are equal to the same thing are also equal to one another." Common Notion No. 1, I *The Thirteen Books of Euclid's Elements* 155 (T. Heath trans. 2d ed. 1956). This court, even sitting *en banc,* could not reverse that principle.

J. SKELLY WRIGHT, Circuit Judge, with whom MIKVA, Circuit Judge, joins, disenting from denial of rehearing en banc:

I agree with Chief Judge Robinson and Circuit Judges Edwards and Ginsburg that the issue in *Singleton I* was "sufficiently distinct from that raised in *Singleton II,*" concurring statement of Edwards, J. at 1, and that, thus, the law of the case doctrine is completely inapplicable. Indeed, the

such injustice is involved. For a rather different view of the facts, see the majority opinion in

*Singleton I* court seemed to say precisely that it thought the due process issue—the core of *Singleton II*—distinct from the sufficiency issue before it. *See United States v. Singleton,* 702 F.2d 1159, 1166 n. 23 (D.C.Cir.1983). It is only the second panel that transformed *Singleton I's* sufficiency ruling into a ruling on the due process issue that is the basis of this appeal. Admittedly, the dissent in *Singleton I* argued that the due process issue should have been reached, but the majority explicitly rejected that view. 702 F.2d at 1166 n. 23. Now, however, we are told that, in fact, the due process issue has already been decided and need not be considered again by this court.

The context of this appeal should be stressed, for it is important to remember that we are considering a criminal proceeding against an individual person, not some abstract legal puzzle. On the night of September 8, 1975, Macio Singleton was walking on a Washington street in the direction of his mother's house. A Gino's restaurant in the area had just been robbed. Police officers seized Singleton; the apprehending officer later testified that he believed Singleton to be a man he had seen leaving the restaurant and running at the sight of the police. The police brought Singleton to the restaurant. Before showing him to the four counterwomen, the police told the counterwomen that they had a suspect in the robbery, and they asked for a positive identification. The police, who had not previously asked for a description of the robber, now brought Singleton before the counterwomen. Singleton was in handcuffs. The police placed a gym bag used in the robbery next to Singleton; the bag had not been found on or near Singleton. The sawed-off shotgun used in the robbery was in the bag and may have been visible. In response to this "show-up," three of the four counterwomen, who were grouped together throughout the identification process, answered the request for identification affirmatively. *See Singleton I,* 702

*Singleton I.*

F.2d at 1163–1167 & n. 20; *id.* at 1173–1180 (Wright , J., dissenting).

The show-up was admitted at Singleton's trial. *Singleton I*, 702 F.2d at 1165. The jury convicted. Judge Bryant overturned the verdict on insufficiency of the evidence grounds. He emphasized that the show-up was "a clear-cut example of the dangerous potential of the one-man 'show-up' for tragic misidentification." *United States v. Singleton*, Criminal No. 75–721 (D.D.C. Sept. 3, 1981), *quoted in Singleton I*, 702 F.2d at 1165 n. 18, and that the show-up identifications were "flatly contradicted by the independent recollections of the [identifying] witnesses.'" *United States v. Singleton*, Criminal No. 75–721 (D.D.C. Sept. 3, 1981), *quoted in Singleton I*, 702 F.2d at 1165 n. 19.

In a split decision this court reversed. Emphasizing that it had reviewed "with considerable care the fifteen-volume transcript in this case," *Singleton I*, 702 F.2d at 1163, the court found the evidence, including the show-up, sufficient for conviction. As noted, the court specifically declined to reach the due process issue. *Id.* at 1166 n. 23.

On remand, Judge Bryant ordered a new trial. He then ordered the show-up suppressed because, in his view, it violated due process. On appeal, two of the three judges refused to consider whether Judge Bryant had correctly determined that the show-up violated due process. Instead, they relied on "law of the case" and said that the *Singleton I* majority had settled the due process issue even though the *Singleton I* majority had explicitly disavowed such an intention.

I am convinced that law of the case should not govern for three reasons. First, the sufficiency determination of *Singleton I* included other evidence. The *holding* of that case was that the sum of the evidence—all fifteen volumes, as the *Singleton I* majority stressed—was sufficient to convict. *See also Singleton I*, 702 F.2d at 1167 (emphasizing the entirety of the evidence). On this appeal, in contrast, there is no other evidence, and the show-up must be considered on its own. Second, as the Supreme Court has clearly stated, the due process analysis set forth in *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), requires underlying judicial "finding[s] of historical fact," *Sumner v. Mata*, 455 U.S. 591, 597 n. 10, 102 S.Ct. 1303, 1307 n. 10, 71 L.Ed.2d 480 (1982) (*per curiam*). As this court has repeatedly held, a trial court's factual determinations compel appellate deference under the "clearly erroneous" standard. *See, e.g., United States v. Weisz*, 718 F.2d 413, 429 (D.C.Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 1285, 79 L.Ed.2d 688 (1984); *United States v. Hinckley*, 672 F.2d 115, 119 (D.C.Cir.1982). *See also United States v. Damsky*, 740 F.2d 134, 140 (2d Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 298, 83 L.Ed.2d 233 (1985) (applying "clearly erroneous" standard to finding underlying *Neil v. Biggers* analysis). Unquestionably, that was not the standard in *Singleton I*. Third, even if law of the case were somehow applicable, I am convinced that the *Singleton I* analysis is severely flawed, and the law of the case doctrine does not permit the perpetuation of a manifest injustice. *See Arizona v. California*, 460 U.S. 605, 618 n. 8, 103 S.Ct. 1382, 1392 n. 8, 75 L.Ed.2d 318 (1983).

It is urged, however, that, even though wrongly decided, *Singleton II* makes no new law, and is thus inappropriate for *en banc* consideration. I find this argument completely unpersuasive for two reasons. First, it is clear that, as Judge Bryant concluded, there is a very serious possibility that this show-up has such a potential for unreliability that it is fundamentally unfair to permit its use. Since we are considering a criminal proceeding in which conviction and incarceration may well result from the use of the show-up, I view that question of fundamental fairness, even in the context of a single case, as "a question of exceptional importance." Fed.R. App.P. 35(a). Second, I cannot agree that reciting the proper standard and grossly misapplying it somehow insulates a case from *en banc* review. The life of legal

standards, after all, is in their application, not in their abstract purity, and we should be willing to grant *en banc* review for a troubling misapplication of the governing standard, particularly in a criminal context.

I respectfully dissent from the denial of rehearing *en banc*.