824 F.2d 1240
 263 U.S.App.D.C. 260
 Mary BARTLETT, on Behalf of Josephine NEUMAN, Appellant
v.
Otis R. BOWEN, Secretary, Health and Human Services.
James T. MARTIN, Jr.
v.
D.C. METROPOLITAN POLICE DEPARTMENT, et al. Richard Xander,
et al., Appellants.
UNITED STATES of America, Appellant
v.
Christine MEYER, et al.
 Nos. 85-5233, 85-6071, 85-6072, 85-6169, 85-6171 and 85-6172.
 United States Court of Appeals,
District of Columbia Circuit.
 July 31, 1987.
 
 ON SUGGESTION FOR REHEARING EN BANC
 Before WALD, Chief Judge, and ROBINSON, MIKVA, EDWARDS, RUTH B. GINSBURG, BORK, STARR, SILBERMAN, BUCKLEY, WILLIAMS and D.H. GINSBURG, Circuit Judges.
 PER CURIAM.
 
 85-5233
 ORDER
 
 1
 The Court, on its own motion, has reconsidered appellee's suggestion for rehearing en banc. Upon such reconsideration, it is
 
 
 2
 ORDERED, by the Court en banc, on its own motion, that the order of the en banc court of June 8, 1987, and the panel order of the same date, be, and the same hereby are, vacated, and it is
 
 
 3
 FURTHER ORDERED, by the Court en banc, on its own motion, that the judgment, the panel opinion of March 17, 1987 and the dissenting opinion of the same date be, and the same hereby are, reinstated, and it is
 
 
 4
 FURTHER ORDERED, by the Court en banc, that appellee's suggestion for rehearing en banc is denied.
 
 
 5
 The panel filing the opinion of March 17, 1987 is this date entering an order again denying the petition for rehearing directed to it.
 
 
 6
 Separate statements are attached, as follows:
 
 
 7
 1. HARRY T. EDWARDS, Circuit Judge, concurring in the denials of rehearing en banc, with whom WALD, Chief Judge and SPOTTSWOOD W. ROBINSON, III, MIKVA and RUTH BADER GINSBURG, Circuit Judges concur.
 
 
 8
 2. SILBERMAN, Circuit Judge, concurring in the denials of rehearing en banc.
 
 
 9
 3. Joint Statement dissenting from the vacatur of orders and from the denials of rehearing en banc by BORK, STARR, BUCKLEY, WILLIAMS and D.H. GINSBURG, Circuit Judges.
 
 
 10
 4. STARR, Circuit Judge, dissenting from the denials of rehearing en banc.
 
 No. 85-6071 and Consolidated Case 85-6072
 ORDER
 
 11
 The Court, on its own motion, has reconsidered appellants' suggestion for rehearing en banc. Upon such reconsideration, it is
 
 
 12
 ORDERED, by the Court en banc, on its own motion, that the order of the en banc court of May 8, 1987, and the panel order of the same date, be, and the same hereby are, vacated, and it is
 
 
 13
 FURTHER ORDERED, by the Court en banc, on its own motion, that Section IV of the opinion of February 10, 1987, the dissenting opinion, and the judgment of the same date with respect thereto, be, and the same hereby are, reinstated, and it is
 
 
 14
 FURTHER ORDERED, by the Court en banc, that appellants' suggestion for rehearing en banc is denied.
 
 
 15
 The panel filing the opinion of February 10, 1987 is this date entering an order again denying the petition for rehearing directed to it.
 
 
 16
 Separate statements are attached, as follows:
 
 
 17
 1. HARRY T. EDWARDS, Circuit Judge, concurring in the denials of rehearing en banc, with whom WALD, Chief Judge and SPOTTSWOOD W. ROBINSON, III, MIKVA and RUTH BADER GINSBURG, Circuit Judges concur.
 
 
 18
 2. SILBERMAN, Circuit Judge concurring in the denials of rehearing en banc.
 
 
 19
 3. RUTH BADER GINSBURG, Circuit Judge, concurring in the denial of rehearing en banc, with whom HARRY T. EDWARDS, Circuit Judge concurs.
 
 
 20
 4. Joint Statement dissenting from the vacatur of orders and from the denials of rehearing en banc by BORK, STARR, BUCKLEY, WILLIAMS and D.H. GINSBURG, Circuit Judges.
 
 
 21
 5. STARR, Circuit Judge, dissenting from the denials of rehearing en banc.
 
 
 22
 No. 85-6169 and Consolidated Case Nos. 85-6171 and 85-6172
 
 ORDER
 
 23
 The Court, on its own motion, has reconsidered appellant's suggestion for rehearing en banc. Upon such reconsideration, it is
 
 
 24
 ORDERED, by the Court en banc, on its own motion, that the order of the en banc court of April 30, 1987, and the panel order of the same date, be, and the same hereby are, vacated, and it is
 
 
 25
 FURTHER ORDERED, by the Court en banc, on its own motion, that the judgment and panel opinion of February 13, 1987 be, and the same hereby are, reinstated and it is
 
 
 26
 FURTHER ORDERED, by the Court en banc, that appellant's suggestion for rehearing en banc is denied.
 
 
 27
 The panel filing the opinion of February 13, 1987 is this date entering an order again denying the petition for rehearing directed to it.
 
 
 28
 Separate statements are attached, as follows:
 
 
 29
 1. HARRY T. EDWARDS, Circuit Judge, concurring in the denials of rehearing en banc, with whom WALD, Chief Judge and SPOTTSWOOD W. ROBINSON, III, MIKVA and RUTH BADER GINSBURG, Circuit Judges concur.
 
 
 30
 2. SILBERMAN, Circuit Judge concurring in the denials of rehearing en banc.
 
 
 31
 3. MIKVA, Circuit Judge, concurring in the denial of rehearing en banc.
 
 
 32
 4. Joint Statement dissenting from the vacatur of orders and from the denials of rehearing en banc by BORK, STARR, BUCKLEY, WILLIAMS and D.H. GINSBURG, Circuit Judges.
 
 
 33
 5. STARR, Circuit Judge, dissenting from the denials of rehearing en banc.
 
 
 34
 HARRY T. EDWARDS, Circuit Judge, concurring in the denials of rehearing en banc, with whom WALD, Chief Judge, ROBINSON, MIKVA and RUTH BADER GINSBURG, Circuit Judges, concur:
 
 
 35
 In decrying the "instability and confusion" allegedly created by our orders vacating en banc review in these cases, my colleague Judge Starr elevates some imagined precept of immutability and a self-styled notion of orderliness over correctness as a guiding principle. This utterly misperceives the gravity of the decision to accord rehearing en banc--a determination that calls for us to exercise the best of our collective wisdom.
 
 
 36
 Justice Stewart's admonition that " '[w]isdom too often never comes, and so one ought not to reject it merely because it comes late,' " Boys Markets, Inc. v. Retail Clerks Local 770, 398 U.S. 235, 255, 90 S.Ct. 1583, 1595, 26 L.Ed.2d 199 (1970) (quoting Henslee v. Union Planters National Bank and Trust Co., 335 U.S. 595, 600, 69 S.Ct. 290, 293, 93 L.Ed. 259 (1949) (Frankfurter, J., dissenting)), is especially apt in this context. The decision to grant en banc consideration is unquestionably among the most serious non-merits determinations an appellate court can make, because it may have the effect of vacating a panel opinion that is the product of a substantial expenditure of time and effort by three judges and numerous counsel. Such a determination should be made only in the most compelling circumstances.
 
 
 37
 Contrary to the suggestion made by my dissenting colleague, there is absolutely nothing wrong with a majority of this court acting to reconsider and vacate the ill-conceived grants of en banc rehearings in these cases. Under the applicable Federal Rules, this court retains the full authority to act on its own motion to determine whether to hear or rehear cases en banc. The simple point here is that a majority of this court has now recognized, albeit belatedly, that the cases at hand do not deserve en banc treatment.
 
 
 38
 The dissent urges that en banc review is appropriate in these cases because they are cases of "exceptional importance" where the panel's decision allegedly was either "clearly wrong" or "highly dubious." The problem with this view, however, is that it reduces the "exceptional importance" test to a self-serving and result-oriented criterion. Under the dissenters' standard, one judge's case of "exceptional importance" is another judge's "routine or run-of-the-mill" case, a point well-illustrated by the dissenters' specious characterization of Bartlett v. Bowen, 816 F.2d 695 (D.C.Cir.1987). The dissenters have labelled Bartlett a "sweeping and revolutionary decision," almost as if to suggest that it represents the seminal opinion in constitutional adjudication. Such a statement is quite extraordinary, however, because, as any reader of it can plainly see, the decision in Bartlett merely follows well-established Supreme Court precedent.
 
 
 39
 The dissenters also claim that Bartlett "purported to decide the highly controversial question of Congress' power to remove Supreme Court jurisdiction over constitutional challenges under the exceptions clause of article III of the Constitution;" but this is a flagrant misstatement of the opinion. The majority in Bartlett merely observed that
 
 
 40
 [C]ourts and legal scholars routinely assume that there is a due process right to have the scope of constitutional rights determined by some independent judicial body--and the Supreme Court has never held or hinted otherwise. On the contrary, although it is undisputed that Congress has some leeway to affect the jurisdiction of the lower federal courts, Congress may not deny to a person attacking a statute "the independent judgment of a court on the ultimate question of constitutionality." St. Joseph Stock Yards Co. v. United States, 298 U.S. at 84 [56 S.Ct. 720 at 740, 80 L.Ed.2d 1033 (1936) ] (Brandeis, J., concurring).
 
 
 41
 Although there is no definitive answer to the question whether there are constitutional restraints when Congress seeks to limit the jurisdiction of all federal courts, we need not address that question here.
 
 
 42
 Bartlett, 816 F.2d at 706 (footnote omitted). The majority in Bartlett expressly declined to define the full reach of Congress' power under the exceptions clause of article III. Id. In light of the dissenters' misstatement of the holding in Bartlett, it is difficult to resist the conclusion that my dissenting brethren would like to rehear Bartlett en banc so that they might create some "sweeping and revolutionary" new law in the area of constitutional adjudication. This would be a gross abuse of the en banc process.
 
 
 43
 My dissenting colleague leaves the impression that rehearings en banc involve no significant expenditure of judicial energies. In fact, the institutional cost of rehearing cases en banc is extraordinary. Each year, every judge has a heavy schedule of brief-reading, oral arguments, motions work and opinion-writing in connection with cases on the regular calendar. It is an enormous distraction to break into this schedule and tie up the entire court to hear one case en banc. It especially burdens judges who already are carrying a large backlog of cases, and it substantially delays the case being reheard, often with no clear principle emanating from the en banc court.
 
 
 44
 Underlying the dissenters' calls for rehearings en banc, and especially their resort to a "clearly wrong"/"highly dubious" test to determine when to rehear a case en banc--is the implicit view that every time a majority of the judges disagree with a panel decision, they should get rid of it by rehearing the case en banc. The error in this proposition is the concept that it is somehow desirable that majority rule should determine the outcome of cases. However salutary that principle may be in the context of popularly elected legislatures where a majority decision reflects the will of the voters who chose the lawmakers, it has no equivalent value in an intermediate court of review. The fact that 6 of 11 judges agree with a particular result does not invest that result with any greater legal validity than it would otherwise have. The reason we use majority rule on a panel is because there must be some device for reaching a decision where there is disagreement among three judges; it is not because correctness is assured by having as many legal minds as possible in agreement.
 
 
 45
 The dissent's "clearly wrong"/"highly dubious" test not only serves no useful purpose in this intermediate appellate judicial context, it does substantial violence to the collegiality that is indispensable to judicial decisionmaking. Collegiality cannot exist if every dissenting judge feels obliged to lobby his or her colleagues to rehear the case en banc in order to vindicate that judge's position. Politicking will replace the thoughtful dialogue that should characterize a court where every judge respects the integrity of his or her colleagues. Furthermore, such a process would impugn the integrity of panel judges, who are both intelligent enough to know the law and conscientious enough to abide by their oath to uphold it.
 
 
 46
 The Federal Rules of Appellate Procedure explicitly recognize that en banc rehearing is "not favored and ordinarily will not be ordered," except when consideration is necessary to secure or maintain uniformity of decisions or when a case involves a question of exceptional importance. FED.R.APP.P. 35(a). Under this rule, it is well-understood that it is only in the rarest of circumstances when a case should be reheard en banc. In other words, for the appellate system to function, judges on a circuit must trust one another and have faith in the work of their colleagues, including Senior Judges and visiting judges from other circuits. Obviously, no judge agrees with all of the decisions handed down in the circuit, nor would every judge write a particular opinion in the same fashion. But if such disagreements determined whether or not a case should be reheard en banc, the number of en banc rehearings would increase at least a hundredfold.
 
 
 47
 By declining to rehear a case, "[w]e do not sit in judgment on the panel; we do not sanction the result it reached." Jolly v. Listerman, 675 F.2d 1308, 1311 (D.C.Cir.) (Robinson, C.J., concurring in denial of rehearing en banc ) (footnote omitted), cert. denied, 459 U.S. 1037, 103 S.Ct. 450, 74 L.Ed.2d 604 (1982). We decide merely that, because the case does not present questions of " 'real significance to the legal process as well as to the litigants,' " review by the full court is not justified. Id. at 1310 (quoting Church of Scientology v. Foley, 640 F.2d 1335, 1341 (D.C.Cir.) (en banc ) (dissenting opinion), cert. denied, 452 U.S. 961, 101 S.Ct. 3110, 69 L.Ed.2d 972 (1981)).
 
 
 48
 In conclusion the court's decisions denying the suggestions for rehearing en banc in these cases are fully justified and commendably in accord with the legal standards that appropriately guide the determination to rehear a case en banc. Anyone who doubts the wisdom of that determination here would be well-advised to go directly to the original panel opinions for an accurate statement of the case holdings.
 
 
 49
 MIKVA, Circuit Judge, concurring in the denial of rehearing en banc:
 
 
 50
 I join in Judge Edwards' statement responding to the dissenters. I write additionally to set the record straight on United States v. Christine Meyer. In challenging the decision to reinstate the panel opinion in United States v. Christine Meyer, 816 F.2d 295 (1987), the dissenters mischaracterize the panel's holding, and misconceive the facts of the case. More importantly, they misinterpret the relevant decisions of the Supreme Court and imply an effort on the part of the panel to subvert the impact of those Supreme Court cases. Their contentions are untenable.
 
 
 51
 In U.S. v. Goodwin, 457 U.S. 368, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982), the Supreme Court declined to adopt any per se rules regarding prosecutorial vindictiveness in the pretrial context. The Court determined that the per se rule applicable in the post-trial context was not suitable for pretrial situations. In post-trial cases, a presumption of vindictiveness will lie whenever the prosecutor "ups the ante" following a defendant's exercise of a legal right. On the other hand, the Court refused to adopt a "per se rule" that in the pretrial context no presumption of vindictiveness can ever lie. The lesson of Goodwin is that proof of a prosecutorial decision to increase charges after a defendant has exercised a legal right does not alone give rise to a presumption in the pretrial context. The rationale supporting the Court's teaching is that this sequence of events, taken by itself, does not present a realistic likelihood of vindictiveness. But when additional facts combine with this sequence of events to create such a realistic likelihood, a presumption will lie in the pretrial context. The critical question is whether the defendants have presented such facts--whether the defendants have shown that all of the circumstances, when taken together, support a realistic likelihood of vindictiveness and therefore give rise to a rebuttable presumption.
 
 
 52
 The panel's opinion held that the defendants in this case presented evidence that could allow a court to find that there was a realistic likelihood of vindictiveness and that a presumption thus applied. The dissenters at times suggest that the panel "defied" Goodwin by holding that a prosecutor's decision to up the ante following a defendant's exercise of a legal right itself created a presumption of vindictiveness. The panel held no such thing. It enumerated four very specific factors not present in Goodwin that, when added to the prosecutor's decision to increase charges, provided the extra circumstances to support a realistic likelihood of vindictiveness--and therefore an allowable presumption of vindictiveness. Any suggestion that the panel's opinion is more broad is just not so.
 
 
 53
 When the dissenters do acknowledge the panel's inspection of the actual set of circumstances in the case, they attempt to dismiss them by referring to the prosecutor's recognized interest in conducting plea negotiations. This reasoning is most strange, since there were no plea negotiations in this case. The government's decision to increase charges did not occur in the context of plea bargaining. It occurred when the defendants refused to pay the fine assessed against all the other defendants involved and asked for trial. The panel's decision explicitly recognizes that had the prosecutor informed the defendants during plea bargaining that they might face increased charges if they chose to go to trial, a court could not find prosecutorial vindictiveness. The dissenters' inattention to this statement and to the actual facts of this case suggests most careless and frivolous evaluation of the panel opinion.
 
 RUTH BADER GINSBURG, Circuit Judge:
 
 54
 I concur in Judge Edwards' statement and add a few comments, in which Judge Edwards joins, about one of the three cases that will not be reheard.
 
 
 55
 To demonstrate that Martin v. D.C. Metropolitan Police Department, 812 F.2d 1425 (D.C.Cir.1987), warrants en banc attention, our dissenting colleagues indulge in much "make believe" about that case and the precedent it applies, Hobson v. Wilson, 737 F.2d 1 (D.C.Cir.1984), cert. denied, 470 U.S. 1084, 105 S.Ct. 1843, 85 L.Ed.2d 142 (1985). We note some glaring omissions:
 
 
 56
 1. In the Hobson case itself, discovery was not at issue on appeal, for it had long since been completed.
 
 
 57
 2. Hobson acknowledged the existence of cases in which "plaintiffs are able to paint only with a very broad and speculative brush at the pre-discovery stage," and therefore cautioned against "overly rigid application" of the pleading rule the case announced in dictum. Hobson, 737 F.2d at 30-31.
 
 
 58
 3. In Martin a highly competent district judge, diligently endeavoring to apply Hobson to a different case and setting, did not find it at all "plain" or "clear" that Hobson installed an altogether rigid, entirely automatic approach; indeed, the district judge ruled in Martin's favor and allowed him to proceed to uncircumscribed discovery.
 
 
 59
 4. The appellate panel in Martin, applying Hobson as the author of that opinion comprehended the precedent, cut back allowable discovery severely, permitting only a sharply limited, precisely defined line of inquiry, and even then, only because of special exigencies in the particular case.
 
 
 60
 5. The Martin panel announced this bottom line: "If, after the limited discovery we have specified, [Martin] has not presented an amended complaint containing 'nonconclusory allegations of evidence of [unconstitutional] intent,' ... his constitutional tort claims must be dismissed." Martin, 812 F.2d at 1438 (emphasis added).
 
 
 61
 Only by "sweeping all the chessmen off the table" can one find, as the dissenters purport to do, "square conflict between [Martin ] and Hobson," an open door for discovery, grace a Martin, with respect to "any complaint" alleging unconstitutional motive, or no utility in a motion to dismiss such a case after Martin. See Hand, Mr. Justice Cardozo, 52 HARV.L.REV. 361, 362 (1939) ("He never disguised the difficulties, as lazy judges do who win the game by sweeping all the chessmen off the table."). Sensibly read and applied, Martin should arm, not disarm, the government in opposing baseless lawsuits. At the same time, Martin coupled with Hobson should inhibit precipitous dismissal of genuinely meritorious claims.
 
 
 62
 SILBERMAN, Circuit Judge, concurring in the denials of rehearing en banc:
 
 
 63
 As should be apparent, some change in the court's thinking concerning the desirability of en bancs has taken place. We have now vacated en banc orders in four cases--the three we deal with today and Mississippi Industries v. FERC, 808 F.2d 1525 (D.C.Cir.1987) in which the en banc order was vacated and the panel agreed to adopt the dissent. See Orders of June 24, 1987.[1] I am one who, upon reflection, has reconsidered his views and am now inclined to favor en bancs only in cases of exceptional importance to this Circuit. For instance, a case that permitted us to resolve a substantial conflict within our own precedents or address an issue with an unusually significant impact on the work of the Circuit would be the type that warrants the institutional costs of a time consuming and unwieldy en banc resolution. When the Supreme Court is likely to grant certiorari to decide an issue of national import, en banc treatment may be superfluous unless the panel opinion[s] failed to discuss a major issue.
 
 
 64
 Given the increasing number of cases designated for en banc rehearing and the considerable strain those cases place, directly and indirectly, on the functioning of the court, I see nothing unusual or improper in the court's reassessment of its en banc caseload. Accordingly, I concur in the court's decisions today. I write separately, however, to explain why, in my view, each of the three cases we deal with today is inappropriate for rehearing en banc.
 
 
 65
 JAMES T. MARTIN V. D.C. METROPOLITAN POLICE DEPARTMENT, ET
 
 AL., 812 F.2d 1425 (D.C.Cir.1987)
 
 66
 The dissent believes this case warrants rehearing because directly inconsistent with the portion of Hobson v. Wilson entitled "Pleading Unconstitutional Motive," 737 F.2d 1, 29-31 (D.C.Cir.1984). But as the majority opinion diplomatically implied, see Martin, 812 F.2d at 1436 n. 22, virtually that entire section of Hobson was dicta. Since in Hobson the panel did not doubt that the complaint met the Harlow standard of sufficient specificity, see Hobson, 737 F.2d at 31, the discussion of the outer boundaries of that requirement--particularly as it related to discovery--was unnecessary to the decision. It is not surprising therefore that two of the Hobson panel members, sitting again in Martin, so vigorously dispute the meaning of the prospective rule announced in Hobson. Be that as it may, I do not think the holding in Hobson is even arguably inconsistent with Martin.
 
 
 67
 Moreover, I read the Martin panel opinion as its author does, as limited to the "special exigencies" in this case. I take the opinion to hold that plaintiff is entitled to limited discovery as to what occurred at the November 29th meeting, despite plaintiff's failure to allege direct evidence of unconstitutional motive, because our previous opinions had not been totally clear on the pretrial development of limited immunity cases. See Martin, 812 F.2d at 1436. Presumably the next plaintiff will not receive such leeway.
 
 
 68
 U.S.A. V. CHRISTINE MEYER, ET AL., 810 F.2d 1242 (D.C.Cir.1987)
 
 
 69
 This case lacks, in my view, the broad significance the dissent attaches to it. The district court found actual vindictive prosecution and the Supreme Court in United States v. Goodwin, 457 U.S. 368, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982), has acknowledged that such a finding is possible even in a pre-trial setting. See id. at 380-81, 102 S.Ct. at 2492-93. The panel opinion, however, did not actually affirm the district court's finding. After discussing the limited scope of review of that finding (clearly erroneous), see Meyer, 810 F.2d at 1244-45, it concluded that under the facts presented a presumption of vindictive prosecution should apply. The opinion could well be read as holding only that the district court legitimately drew inferences from the facts to make its finding that the government engaged in vindictive prosecution. That the government increased the charge and potential penalty for those who insisted on the right to trial still does not, by itself, permit a finding of vindictive prosecution--with or without a presumption. The key (and unusual) additional fact here is that after the government "upped the ante" and defendants asked for the jury trial to which they were entitled on the graver charge, the government reversed course and moved to dismiss the additional charge so as to avoid the jury. I doubt that kind of unseemly prosecutorial maneuvering is common and therefore believe the impact of the majority opinion is quite limited.
 
 
 70
 I think the dissent exaggerates by accusing the panel opinion of undercutting the Supreme Court's statement in Bordenkircher v. Hayes, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978), that "[I]n the give-and-take of plea bargaining there is no ... element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer." Id. at 363, 98 S.Ct. at 668. Here, unlike in Bordenkircher, the defendants (at least some of them) were not warned that if they refused to plead guilty they might face additional charges.
 
 
 71
 The remedy chosen by the district court is in this case, I admit, somewhat dubious. But I am unwilling to conclude, as apparently do the dissenters, that no matter how badly the government behaves in increasing the charge against a defendant, the district court may not dismiss the whole case, but is instead limited to excising only the additional charge. Cf. United States v. Omni Int'l Corp., 634 F.Supp. 1414, 1436-40 (D.Md.1986).
 
 
 72
 MARY BARTLETT V. BOWEN, SECRETARY OF HHS, 816 F.2d 695 (D.C.Cir.1987)
 
 
 73
 It took the panel over a year to produce the majority and dissenting opinions. In the process both authors, like World War I armies scrambling sideways to the channel, covered a good deal of ground. The majority's constitutional holding is, of course, dicta, but I do not deny the case's importance because the majority's perception of the constitutional issue governs its interpretation of the statute. Furthermore, were I forced to choose, I would be inclined to favor the dissent's analysis. I think it likely, however, that the Supreme Court will grant certiorari (if the government seeks it) and I seriously doubt that en banc treatment will add much to the panel's discussion of the issues and its review of what is, in truth, somewhat puzzling Supreme Court precedent. The question will surely eventually be resolved by the Supreme Court and, in the meantime, I doubt very much whether the work of this court will be seriously affected by our refusal to rehear the case.
 
 
 74
 Joint Statement dissenting from the vacatur of orders and from the denials of rehearing en banc in Nos. 85-5233, 85-6071, et al., and 85-6169, et al., filed by BORK, STARR, BUCKLEY, WILLIAMS and D.H. GINSBURG, Circuit Judges:
 
 
 75
 After full deliberation, the court voted to vacate the panel opinions in these cases and to rehear the cases en banc. Now the court vacates the prior orders in each of the three cases, denies the petitions for en banc rehearing, and reinstates all three panel opinions.
 
 
 76
 It is apparent that each of the cases today removed from our rehearing docket deserves en banc reconsideration. Each involves an issue of exceptional importance and, as we demonstrate below, each received a panel resolution that we think is clearly wrong, and is, at the very least, highly dubious. The discussions of the first two cases are brief because in each there was a full dissent at the panel stage. The reader may find further information about what we think wrong with the panel majorities's decisions in those dissents. Rather fuller treatment is accorded the third case because there was no dissent on the panel.Bartlett v. Bowen, 816 F.2d 695 (D.C.Cir.1987)
 
 
 77
 The Medicare Act denies reimbursement for nursing care costs if the applicant, during the same spell of illness, had been reimbursed for the costs of prior nursing care in a Christian Science facility. Appellant Bartlett sued to recover costs denied by the Secretary of the Department of Health and Human Services under this provision. Bartlett maintained that the provision violated the first amendment's guarantee of the free exercise of religion and the equal protection component of the fifth amendment's guarantee of due process. The district court dismissed the complaint for want of subject matter jurisdiction. Only the jurisdictional ruling was before the panel on appeal.
 
 
 78
 The Medicare Act provides that any individual dissatisfied with the Secretary's determination of benefits is entitled to judicial review. Section 1395ff(b)(2), however, states that judicial review shall not be available "if the amount in controversy is less than $1000." Bartlett's claim was for $286. The statutory language is flat and contains no hint of any exception for suits asserting a constitutional claim. There is also no hint of any intention to allow an exception of any sort in the legislative history. It is clear, moreover, that the statute's preclusion of judicial review was Congress' assertion of sovereign immunity, a doctrine of American law that is as old as the nation and which is routinely invoked by the Supreme Court to deny jurisdiction over suits against the government for benefits. Sovereign immunity denies jurisdiction over such claims whether their legal basis is constitutional or nonconstitutional.
 
 
 79
 The panel majority reversed the judgment of the district court, holding that the court had jurisdiction to decide Bartlett's claim on the merits. The opinion said the statute had to be read to contain an exception for claims that depended upon a challenge to a statute's constitutionality. Though, given that statutory interpretation, there was no need to go further, the panel majority went on to give its opinion that Congress could never withhold jurisdiction over a constitutional challenge in both state and federal courts. In doing this, the majority purported to decide the highly controversial question of Congress' power to remove Supreme Court jurisdiction over constitutional challenges under the exceptions clause of article III of the Constitution: "the supreme Court shall have appellate Jurisdiction, both as to Law and Fact, with such Exceptions, and under such Regulations as the Congress shall make." The majority said that Congress could never take a constitutional issue from all courts.
 
 
 80
 The upshot of the decision, then, is this.
 
 
 81
 Despite the clearest statutory language and legislative history to the contrary, any statute precluding judicial review of a benefit claim will be read to contain an exception for a claim that advances a constitutional argument. This means that the solidly entrenched doctrine of sovereign immunity no longer applies in such cases. The ruling necessarily applies not only to federal sovereign immunity, which is derived from article III, section 2, of the Constitution, but to the sovereign immunities of the several states under the eleventh amendment. Bartlett is thus a sweeping and revolutionary decision, quite aside from its gratuitous dicta concerning congressional power over the Supreme Court's jurisdiction. In this circuit, at least, it will have great impact on benefits legislation. Indeed, it will probably draw claimants to litigate here. We find it inconceivable that the case is not worthy of the full court's attention.
 
 
 82
 Martin v. D.C. Metropolitan Police Department, 812 F.2d 1425 (D.C.Cir.1987)
 
 
 83
 The court once deemed this case worthy of rehearing en banc out of concern for its precedential import regarding the issue of what allegations must be pleaded in a complaint in order to prevent dismissal of a tort claim against federal law enforcement officials premised on a claim of unconstitutional motive. Plaintiff-appellee charged officers of the United States Capitol Police with violation of his rights under the fifth amendment to the Constitution. Martin's basic allegation was the defendant officers had conspired to pursue his arrest and indictment in order to divert attention from a police assault upon him in connection with a public demonstration and to deter him from exercising his legal rights.
 
 
 84
 In Hobson v. Wilson, 737 F.2d 1 (D.C.Cir.1984), cert. denied, 470 U.S. 1084, 105 S.Ct. 1843, 85 L.Ed.2d 142 (1985), the court addressed this precise issue and set down clear and exacting pleading requirements:
 
 
 85
 [I]n cases involving a claim that defendants acted with an unconstitutional motive, we will require that nonconclusory allegations of evidence of such intent must be present in a complaint for litigants to proceed to discovery on the claim.
 
 
 86
 737 F.2d at 29. The court then went on to state that "plaintiffs must produce some factual support for their claim to avert dismissal." Id. at 30 (emphasis added).
 
 
 87
 Despite the clarity of Hobson, the panel majority, by failing to dismiss the action, implicitly found the following allegation in the complaint sufficient to preclude dismissal:
 
 
 88
 As a result of public and media attention to the unprovoked attack on plaintiff, defendants conspired to develop an unlawful scheme to deflect attention from their actions and to deter plaintiff from seeking to vindicate the violation of his rights.
 
 
 89
 First Amended Complaint, p 18, J.A. at 26, 31. This cannot possibly be considered to be a "nonconclusory allegation[ ] of evidence" of unconstitutional intent. Nor is there anything in this allegation which could be called "factual support."
 
 
 90
 It is plain, therefore, that if Hobson had been followed, Martin's complaint would have been dismissed on the pleadings. The panel majority nevertheless rewrote Hobson and held that Martin was entitled to "limited discovery." Fairness was said to require this result because "the approach to pretrial development of cases such as this one was far from clear and certain when the district court made its rulings in Martin's favor." 812 F.2d at 1436. The only thing that was not "clear" under Hobson, however, was the principle that limited discovery is, as the majority appears to hold, available upon the basis of a complaint that contains absolutely no "nonconclusory allegations of evidence of [unconstitutional] intent" (emphasis added). This option existed only after the majority misread the clear language of Hobson to prohibit only "protracted discovery." Id. at 1439 (Edwards, J., concurring).
 
 
 91
 Nor do we understand how the fact that the district court erred in allowing "uncircumscribed discovery," see id. at 1436 n. 22, changes the analysis. The complaint in this case was insufficient under Hobson and should have been dismissed. Alternatively, the court should have remanded with an instruction to grant leave to amend. There is simply no rational support for the option chosen by the majority--permitting appellant on remand to engage in limited discovery on the basis of a clearly insufficient complaint.
 
 
 92
 Rehearing en banc of the Martin decision is thus required because of a square conflict between that decision and Hobson. It is also required because the decision, if read by the district court and by litigants as we read it, could render the motion to dismiss useless. If the vague, nonfactual allegations in Martin's complaint are enough to withstand dismissal and to entitle him to discovery, one can hardly imagine any complaint that would not be able to achieve that result. The panel opinion thus has the potential to deprive the government of a needed defense against baseless lawsuits.
 
 
 93
 Even if our interpretation of Martin is not the one that the majority intended, as its author says today it is not, five members of this court so read it. Other courts could reasonably interpret the opinion, as we have, to allow limited discovery on the basis of any allegation of unconstitutional motive. Perhaps our reading is wrong; we hope that it is. But if so, then there is an even stronger case for rehearing, viz., so the court could clarify the opinion for the benefit of those who must follow it.
 
 
 94
 United States v. Meyer, 810 F.2d 1242 (D.C.Cir.1987)
 
 
 95
 The Supreme Court has made it clear that prosecutors' charging decisions are not generally subject to close judicial scrutiny. Notwithstanding this direct Supreme Court authority, a panel of this court has held, to the contrary, that where a defendant decides to contest an ordinary police citation, and a United States Attorney files an information containing a misdemeanor charge not originally included in the citation, a presumption of prosecutorial vindictiveness arises warranting dismissal of all charges. The panel's decision is clearly inconsistent with United States v. Goodwin, 457 U.S. 368, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982), and may seriously hamper the effective conduct of prosecutions in this circuit.
 
 
 96
 On April 22, 1985, United States Park Service police issued citations to approximately two hundred political demonstrators outside the White House. Each citation charged a violation of 36 C.F.R. Sec. 50.19 (1985), which makes it a misdemeanor to demonstrate on park grounds without a permit. Most agreed to pay a $50 fine in full satisfaction of the charge, but appellees decided to contest their charge in court. The decision as to the violation to be charged in the citations was made by the Park policemen, who are not lawyers. When the United States Attorney drafted the requisite informations for appellees' separate arraignments, he charged them under section 50.19, and also under a more specific regulation, 36 C.F.R. Sec. 50.30 (1985), which makes it a misdemeanor to obstruct sidewalks. The second charge was added as part of a "plea offer" to some of the defendants; a number of the defendants accepted this "plea arrangement," but appellees chose to go to trial. See Meyer, 810 F.2d at 1244.
 
 
 97
 Appellees moved to dismiss the informations because of prosecutorial vindictiveness. At the hearing on the vindictiveness issue, the government moved to dismiss the second charge. The district court granted the government's motion to dismiss the second charge in the informations, but also dismissed the informations themselves. The district court found "actual vindictiveness" in the government's addition of the section 50.30 charges, which the court concluded was motivated by a desire to punish appellees for electing to contest their section 50.19 charges in court.
 
 
 98
 The panel declined to reach the district court's finding of actual vindictiveness, but decided instead that a presumption of prosecutorial vindictiveness was warranted. The panel's purported authority for applying such a presumption is Blackledge v. Perry, 417 U.S. 21, 27-29 & n. 7, 94 S.Ct. 2098, 2102-03 & n. 7, 40 L.Ed.2d 628 (1974).
 
 
 99
 Blackledge is inapplicable on its face. In that case a prisoner, Perry, had been convicted of misdemeanor assault for an attack on a fellow inmate. He received a six-month sentence from a lower court. Under North Carolina law that court had exclusive jurisdiction for the trial of misdemeanors. State law also provided that anyone convicted of a misdemeanor in that court had a right to trial de novo in a higher court. Perry filed a notice of appeal pursuant to that right. After he did so, however, the prosecutor obtained a grand jury indictment charging him with assault with a deadly weapon in connection with the same conduct for which Perry had already been given a six-month sentence. Perry pleaded guilty and received a sentence of five to seven years in prison. On petition for a writ of habeas corpus, the Court found a likelihood that the prosecutor had sought Perry's felony conviction to punish him for seeking retrial. The Court concluded that such a likelihood warranted a presumption of prosecutorial vindictiveness.
 
 
 100
 The panel maintains that Blackledge applies in this case. Perry was charged with a felony, however, after he exercised his right to automatic appeal of a conviction for a misdemeanor. The presumption of vindictiveness was thus applied in a post-trial setting, not to pretrial charging decisions.
 
 
 101
 In Goodwin, however, the Supreme Court refused to adopt a presumption of prosecutorial vindictiveness in the pretrial setting. The Court explicitly distinguished Blackledge on this basis, and explained why it did not apply in the pretrial setting. Goodwin, 457 U.S. at 369-70, 383-84, 102 S.Ct. at 2486-87, 2493-94. There the prosecutor added a felony charge against the defendant after the defendant had refused to plead guilty to a misdemeanor charge. Holding that the "prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution," id. at 382, 102 S.Ct. at 2493, the Court refused to hold that this conduct warranted a presumption of vindictiveness. "The possibility that a prosecutor would respond to a defendant's pretrial demand for a jury trial by bringing charges not in the public interest that could be explained only as a penalty imposed on the defendant is so unlikely that a presumption of vindictiveness is certainly not warranted." Id. at 384, 102 S.Ct. at 2494 (emphasis in original).
 
 
 102
 In this case, the panel refused to follow Goodwin and instead applied a presumption of vindictiveness in circumstances indistinguishable from Goodwin. The issues raised by that decision are of great importance. Unless the Supreme Court decides to correct our error by writ of certiorari, prosecutors in this circuit will know that if they add just one charge to those made at the time of arrest, they risk dismissal of their entire case. Cf. Meyer, 810 F.2d at 1249 ("The deterrent effect of the rule will remain even if judges resort to this remedy only in a minority of cases."). This result severely limits the prosecutor's discretion about how best to bring charges and to conduct plea negotiations. It ignores the Supreme Court's recognition of "the simple reality that the prosecutor's interest at the bargaining table is to persuade the defendant to forgo his constitutional right to stand trial." Goodwin, 457 U.S. at 378, 102 S.Ct. at 2491. And it undercuts the Court's explicit statement that "in the 'give-and-take' of plea bargaining, there is no ... element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer." Bordenkircher v. Hayes, 434 U.S. 357, 363 (1978). Perhaps most disturbingly, when quelling public disturbances the police will be under pressure to charge those arrested for all possible violations lest it become impossible to prosecute them later for any one of them. Cf. Meyer, 810 F.2d at 1248 ("Even if our holding were to bind prosecutors to all charging decisions of arresting officers, we think the government would suffer no great loss."). With respect, for us at least the panel's decision speaks against itself.
 
 
 103
 The panel's attempt to distinguish Goodwin, see Meyer, 810 F.2d at 1246-47, is unsuccessful. The fact that some defendants pleaded guilty and thus did not receive added charges does not show that the prosecutor "discriminated" among defendants on any other grounds than whether they had pleaded guilty during the plea negotiations; yet the Court in Goodwin explicitly held that "changes in the charging decision that occur in the context of plea negotiation are an inaccurate measure of improper prosecutorial 'vindictiveness.' " Goodwin, 457 U.S. at 379-80, 102 S.Ct. at 2492. Nor is it at all clear why the panel should have been willing to presume vindictiveness because of either the simplicity of the facts that underlie the charges or the complexity of the legal arguments that defendants may raise in their defense. Meyer, 810 F.2d at 1246-47. Those facts seem utterly irrelevant.
 
 
 104
 Finally, the other factor that the panel relied on to justify its holding of presumed vindictiveness--the government's conduct after increasing the charges against the defendant--is also unavailing. The panel noted that at the trial court hearing on vindictiveness the government moved to drop the very charges it had recently added against the defendants. The panel's misguided attempt to infer probable vindictiveness from this fact is demonstrated by the weakness of the inferential chain that it constructs. The withdrawal of charges, like the addition of charges, may occur for a multitude of reasons that all fall within the realm of acceptable prosecutorial discretion--a point that the panel perhaps concedes when it admits that the withdrawal of charges here may have been in good faith, and the prosecutor may have simply changed his mind. The panel speculates, however, that the additional charge may have been withdrawn to avoid the necessity of a jury trial, which the trial judge had granted to the defendants after this charge had been added against them. Yet this flatly ignores the Supreme Court's recognition that this would be a perfectly acceptable motivation for adding or dropping charges: "the prosecutor's interest at the bargaining table," which the Court has found to be a legitimate interest, "is to persuade the defendant to forgo his constitutional right to stand trial." Goodwin, 457 U.S. at 378, 102 S.Ct. at 2491. This is nothing more than the ordinary "give-and-take" of plea bargaining, and here the defendants were entirely "free to accept or reject the prosecution's offer." Hayes, 434 U.S. at 363, 98 S.Ct. at 668; see also Goodwin, 457 U.S. at 380, 102 S.Ct. at 2492 ("just as a prosecutor may forgo legitimate charges already brought in an effort to save the time and expense of trial, a prosecutor may file additional charges if an initial expectation that a defendant would plead guilty to lesser charges proves unfounded"). Once again, this conduct by the prosecutor does not support any presumption of vindictiveness, though the defendant is of course free to try to prove actual vindictiveness based on such conduct.*
 
 
 105
 In the end, therefore, the Court held in Goodwin that judicial interference in prosecutors' charging decisions is to be avoided, even at the risk that a prosecutor's decision to sanction defendants for invoking their right to a jury would go unpunished for want of proof. If the Court reached that judgment in regard to the right to a jury, it is out of the question for us to reach a contrary judgment to protect appellees' right to contest a $50 citation.
 
 
 106
 An independent problem with the panel's decision in this case, which compounds the unfortunate effects of its holding, is the remedy that it approved. The trial court, which had made a finding of actual vindictiveness, dismissed all the charges against the defendants, even those brought originally and thus not tainted by any allegations of vindictiveness. The panel concedes that this is an "extreme" remedy, and is unable to point to any prior cases in which it had been imposed. Meyer, 810 F.2d at 1249. There is good reason for this want of authority. We do not lightly presume that prosecutors act in bad faith when they exercise the considerable powers that society has vested in them to enforce the laws. "A prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution." Goodwin, 457 U.S. at 382. Thus, the proper remedy for prosecutorial vindictiveness is removal of the illegality. The question is not whether "the prosecutor will have nothing to lose by acting vindictively," Meyer, 810 F.2d at 1249, but merely ensuring that the prosecutor will have nothing to gain by acting vindictively. The strong political checks on prosecutorial conduct will ensure that he has something to lose by acting unjustifiably. An extreme remedy such as the one in this case, however, would mean that society has lost its ability to prosecute an individual on what are understood by all to be legitimate charges. If there was any actual vindictiveness in this case, it was cured when the additional charges against the defendants were dropped.
 
 
 107
 In sum, the panel's holding in this case is an unjustified departure from controlling Supreme Court precedent. It represents a view of the plea-bargaining process that is sharply different from the more realistic view taken by the Supreme Court. If allowed to stand, it will significantly hamper prosecutors in this circuit from exercising their discretion in ways the Court has recognized as legitimate.
 
 
 108
 For the reasons set forth, we dissent from the vacatur of orders and from the denials of rehearing en banc.
 
 
 109
 STARR, Circuit Judge, dissenting from vacatur of the orders in Nos. 85-6169, 85-6071/72, 85-5233:
 
 
 110
 At the Founding, the Framers of our system of government envisioned that Article III courts would be institutions where judgment, not will, was exercised. We in the judiciary are thus to be quite unlike the political branches as we carry out what Justice Frankfurter aptly described as a calling with sacerdotal qualities.
 
 
 111
 Whether a particular exercise of judicial judgment is sound or not is itself, I recognize, peculiarly a matter of judgment. There is apt to be no incontestably "right" answer if the issue is truly one entrusted to the exercise of a court's judgment. What is right and meet will depend in large measure upon one's conception of what is appropriate and proper under the circumstances.
 
 
 112
 And thus I relate what is nothing other than my own perception of what has occurred today. My judgment may well be dismissed as idiosyncratic or simply outmoded in the contemporary world of an overburdened and expanding judiciary. But, in my view, it is destabilizing and unseemly for courts, which should be solid rocks in a world filled with rolling stones, to lurch suddenly from one course to another. To be sure, courts enjoy the sheer power to make 180 degree turns in judgment. But my concerns go beyond the issue of power.
 
 
 113
 So too, I recognize that some will say that corrections of a "mistake," albeit one thrice committed in breathtakingly short order, is but a symbol of an institution's wisdom and maturation. But it is, in my judgment, unwise to tear asunder in one mighty blow that which was duly considered and decided upon after careful reflection by the full court. It is quite unlikely that a "mistake," which obviously could infect the exercise of judgment as to one case, would suddenly spread with prairie-fire speed to consume three cases of significance.
 
 
 114
 I am persuaded that we have today contributed to a regrettable aura and reality of instability and confusion. This is all the more to be lamented in a court blessed with our rich tradition and history, including a heritage in the highest traditions of bench and bar of lively disagreement.
 
 
 115
 We should stay the course in all three cases.
 
 
 
 [1]
 Judge Starr apparently does not object to our reconsideration of that case
 
 
 *
 No other circuit has repudiated Goodwin's holding that no presumption of vindictiveness will apply in the pretrial context. The two cases cited in the panel opinion do not support its result. In United States v. Krezdorn, 718 F.2d 1360 (5th Cir.1983), cert. denied, 465 U.S. 1066, 104 S.Ct. 1416, 79 L.Ed.2d 742 (1984), the Fifth Circuit stated that a presumption of vindictiveness would lie when the prosecutor decided "to increase the number or severity of charges following a successful appeal." Id. at 1365. That is not a pretrial decision; it penalizes a defendant for appealing from a conviction, which is what the Supreme Court held unacceptable in Blackledge. And in United States v. Gallegos-Curiel, 681 F.2d 1164 (9th Cir.1982), the court's suggestion that a presumption of vindictiveness might lie in certain extreme circumstances, see id. at 1168-69, was pure dictum since no such presumption was found to be appropriate in that case